18 U.S. 54 (____)
5 Wheat. 54
McCLUNG
v.
ROSS.
Supreme Court of United States.

February 10th, 1820. This cause was argued by Williams, for the plaintiff in error,[(a)] and by the Attorney-General and F. Jones, for the defendant.[(b)]
*117] *February 14th. MARSHALL, Ch. J., delivered the opinion of the court.
This is an action of ejectment, brought by the lessee of David Ross against Charles McClung, for 5000 acres of land, lying in the district of East Tennessee.
At the trial of the cause, the plaintiff, in the court below, gave in evidence two grants from the state of North Carolina, for the land in controversy, to Stockly Donalson and John Hackett, the one dated the 20th of September 1787, and the other dated the 22d of February 1795. He also gave in evidence a deed of conveyance of the said land, purporting to be from Stockly Donalson and John Hackett, dated the 29th of September 1793, and registered in Hawkins county, Tennessee, on the 27th of December 1793. The regular registration of this deed, so far as respected Stockly Donalson, was admitted by the defendant. Its registration as to John Hackett, was not admitted, and was proved only by the following indorsements:
 "December Sessions, 1793.
This deed was proved in open court, and ordered to record.
 Test. RICHARD MITCHELL, C.H.C.
This conveyance was registered, 27th of December 1793, in liber G., p. 127, in the register's office of Hawkins county.
 THOMAS JACKSON, C.R."
*55 It is stated in the bill of exceptions, that the execution of the deed, on the part of Hackett, was not proved.
The defendant also claimed under Stockly Donalson; but his deed being of subsequent date, could confer no title, while the deed to Ross remained in force. *For the purpose of invalidating this deed, he offered in [*118 evidence certain records of the county court of Rhea, showing that the land had been sold for the non-payment of taxes, had been conveyed by the sheriff to the purchaser, and by the purchaser to the defendant. The regularity of this sale, and the validity of the deeds made in consequence of it, were contested, and the court determined against their validity; to which opinion of the court, the counsel for the defendant excepted.
In the year 1803, the legislature of Tennessee passed an act, subjecting all lands to which the Indian claim was extinguished, held by deed, &c., to taxes. The 13th section of the act provides, that "in case there shall not be any goods or chattels on which the sheriff can distress for public taxes, &c., he shall report the same to the court of his county." The court is then directed to make out certain lists, and to direct certain publications, after which the court may enter up judgment, on which execution may issue, and the lands be sold. In 1807, the legislature passed a supplementary act, the 3d section of which enacts, that it shall be the duty of the collector of taxes, in each county, after the 1st day of January, in each year, to make report to the court in writing, "of all such tracts or parts of tracts of land as have, from his own knowledge, or from the information of others, not been returned for taxation for the said preceding year; and it shall be the duty of the said court to cause said report to be recorded in books to be kept for that purpose, and to cause judgment to be entered up for double the tax due on the *said land, not returned for taxation, and so unpaid, and shall [*119 order the same to be sold," &c.
In January 1810, Miller Francis, collector of taxes in Rhea county, for the year 1809, reported to the court, that the following lands were not listed for taxation, for the year 1809, to wit, &c. Then follows a list of several tracts of land, among which is the tract in question, reported three several times in the following terms:

 Reputed owners. Quantity. No. of title. Date of title. Location, Tax.
 Stockly Donalson, 5000 209 20 Sept. 1787. Pleasant, &c.
 S. Donalson and John Hackett, 5000 1347 22 Feb. 1795.
 David Ross, 5000 209 20 Sept. 1787.

Upon the return of which report, the court entered up a judgment for the sale of the said lands, and after the publication required by law, an execution was directed, under which the said land was sold, as being three distinct tracts; when Robert Farquharson became the purchaser of the tracts reported to belong to Stockly Donalson, and to Stockly Donalson and John Hackett; and the agent of David Ross became the purchaser of the tract reported to belong to David Ross.
A question of considerable difficulty arises on the validity of these sales. Under the act of 1803, the power of the court to render judgment in such cases for the sale of land, is founded on there being no personal property from which the tax might be made; the jurisdiction of the court depends on that fact. Whether it is necessary that its existence should be shown in *56 the judgment of the court, is a question on which the state courts appear to *120] have decided differently, at different times. But the last, and we *believe, the correct opinion, report in 5 Hayw. 394, establishes the general principle, that in these summary proceedings, every fact which is necessary to give jurisdiction, ought to appear in the record of the court. The act of 1807 directs the court to proceed, on the return of the collector, that the taxes of the preceding year are unpaid, or that the land has not been returned for taxation. Whether this act, which is supplemental to that of 1803, authorizes the court to give judgment for the sale of land, although there may be personal property in the county, sufficient to pay the tax; or only varies the mode of proceeding against the land, without varying the circumstances under which it may become liable, is a question which does not appear to have been decided in Tennessee, and which it is unnecessary to decide in this case, because we are all of opinion, that if the sale was valid, Ross is to be considered as the purchaser of his own title, and Farquharson as the purchaser of the title of Donalson and Hackett. The objection to this is, that the agent of Ross stood by, and permitted Farquharson to bid. But this objection implies a knowledge on the part of Ross, or his agent, that the land sold in the name of Donalson and Hackett, was his land. There is no evidence, that either of them possessed this knowledge; nor are the circumstances such as would justify its being presumed. Were the court required to presume fraud on this occasion, it is not to Ross, or to his agent, that the evidence on this particular part of the transaction would justify us in ascribing it. We think, then, that the defendants in the *121] court below *acquired no title to Ross's land, by the sheriff's sale or deeds. We think, then, that there was no error in rejecting these deeds.
The defendant, also, claimed the benefit of the act of limitations, which makes seven years' peaceable and adverse possession a complete bar to the action.[(a)] In support of this claim, he relied on the testimony of John Meriott, who swore, that in pursuance of an agreement between him and John Hackett, who informed him, that the land belonged to him, Hackett, *122] *and the defendant, McClung, he took possession of the land, in March 1807, built a house, and cleared seven or eight acres, and retained possession of the land, until the contract was rescinded. By a contract with *57 McClung, he agreed to hold possession for McClung and Hackett. It also appeared in evidence, that Meriott remained in possession, until the autumn of 1808, when he surrendered it to Hackett, who, in the succeeding spring, moved, with his family, into the house Meriott had built, where he resided, until his death, since which event, it has been occupied by his widow and family. The plaintiff then proved, that in 1795, John Hackett showed this agent of Ross, the land in controversy, as the land sold to him; that in the year 1813, the same agent agreed to lease a part of the land to one Cox, who in pursuance of the said agreement, entered thereon, and built a small house, but being threatened by McClung with a suit, he abandoned it.
Upon this testimony, the defendant in the circuit court moved the court to charge the jury, first, that if they believed the possession taken by Meriott to have been on behalf of Hackett and McClung, and that Hackett continued said possession, for himself and McClung, for seven years before suit, it was adverse, and would bar the claim of the lessor of the plaintiff. And further, that the possession of the land taken by Cox, as tenant of Ross, would not suspend the statute of limitations, and that the effect of the said statute could be defeated only by suit at law. This instruction the judge refused to give, but did *charge the jury, that Hackett was by law a tenant in [*123 common with Ross, of which character he could not discharge himself, by agreement with a younger purchaser, from Donalson, and that the statute would not bar his right. With respect to the occupancy of Cox, the judge said, that merely going upon the land, would not stop the running of the statute, but that if an older adverse claimant took actual possession, by building houses, clearing land, &c., the operation of the statute of limitations might be thereby suspended. To this opinion also, the counsel for the defendant excepted.
On examining the whole testimony stated in the bill of exceptions, it appears, that the contract with Hackett, which is stated by Meriott in his deposition, was a contract for the sale and purchase of a part of the tract of 5000 acres sold by Donalson to Ross, and that his contract with McClung was a sale of McClung's part of the same land, on condition that he would hold the whole tract for McClung and Hackett. The actual possession of Meriott, then, does not appear to have extended beyond his purchase. He does not allege, that Hackett put him in possession of more land than was sold to him; nor does it appear, that McClung put him in possession of any land further than the virtual possession which was to be implied from the agreement which has been stated. The possession of Meriott, then, was an actual possession of a part of the land, under a purchase. It was his own possession, in his own right; and not the possession of Hackett and McClung. His agreement with McClung to hold *the residue of the land for [*124 Hackett and McClung, never having been followed, so far as is shown to the court, by actual occupation of any part of that residue, cannot, we think, be construed into such a possession by Hackett and McClung, as to affect the title of Ross. If the defendant cannot avail himself of the possession of Meriott, then, it is not shown, that the bar was complete, when this suit was brought. The contract of sale with Meriott was rescinded, in the autumn or winter of 1808, and Hackett entered into the land, in the spring of 1809. This suit was instituted on the 27th of March 1816. The *58 testimony does not show that the entry of Hackett was anterior to the 27th of March 1809. This, however, ought to be left to the jury.
But the judge was of opinion, that the possession of Hackett was not adverse to that of Ross, because they were tenants in common. That one tenant in common may oust his co-tenant, and hold in severalty, is not to be questioned. But a silent possession, accompanied with no act which can amount to an ouster, or give notice to his co-tenant, that his possession is adverse, ought not, we think, to be construed into an adverse possession. The principles laid down in Barr v. Gratz (4 Wheat. 213), apply to this case.
Neither does it appear to this court, that there is error in that part of the charge, which respects the occupation of Cox, on the part of Ross. It is, that merely going upon the land will not stop the running of the statute, but that if an older adverse claimant took actual possession, by *125] building houses, clearing *land, &c., the operation of the statute of limitations might be thereby suspended. It has been contended, that the statute of Tennessee can be stopped only by actual suit. This is true, when the possession is such as, by its continuance, to constitute a bar. But to make it such, it must be peaceable, for seven years. This is the fact which creates the bar. This fact cannot exist, if the person having the better title takes actual possession, in pursuance of his right. It is unnecessary to inquire, whether the subsequent abandonment of this possession rendered it, in this case, a nullity, because the point is rendered unimportant, by the circumstance that Ross and Hackett were tenants in common. There is, then, no error in the charge, so far as respects the statute of limitations.
But the counsel also requested the judge to charge the jury, that the name of Hackett being signed to the deed from Stockly and Donalson to Ross, since the delivery of said deed, amounts to such an alteration or addition, as will vitiate such deed, unless accounted for by the plaintiff. This charge also, the judge refused to give, but did instruct the jury that the title was vested in Ross, by the deed from Donalson, and could not be divested, although there might be an alteration or addition in a material part of the said deed, such as the name of Hackett being put to the deed and not proved. There is some ambiguity in this instruction, and there is some doubt in the state of the fact. The counsel for the defendant assumes the fact, that the signature of Hackett was affixed to the deed, after its *126] *delivery. This does not appear in the evidence as stated; nor does it appear, whether the signature of Hackett was affixed, before or after the deed was registered. It was not proved or registered as to Hackett, and is void as to him. The court is not, however, prepared to say, that it is void as to Donalson. But the instruction given by the judge is in terms which might mislead the jury, and which appear in fact to have misled them. He says, that the title was vested in Ross, by the deed from Donalson, and could not be divested by the addition of the name of Hackett. Now, this suit was instituted for the whole tract, and the title asserted by Ross was a title to the whole tract. The instruction of the judge might have been understood as informing the jury that the title vested by the deed conformed to the title claimed by Ross. In fact, it was so understood; for the jury found a verdict for the whole tract, and the court gave its judgment for the *59 whole. Now, Ross had no title to more than a moiety, and the judge ought so to have instructed the jury. For this reason, the judgment is to be reversed, and the cause remanded for a new trial.
Judgment reversed.
JUDGMENT.  This cause came on to be heard, on the transcript of the record of the circuit court for East Tennessee, and was argued by counsel: on consideration whereof, it is the opinion of this court, that the circuit court erred, in instructing the jury, that the title to the whole tract of land in the proceedings mentioned, and for which judgment was *rendered in [*127 the said circuit court, was vested in David Ross, whereas, the said court ought to have instructed the jury, that only a moiety of the said land was vested in him. It is, therefore, adjudged and ordered, that the judgment of the said circuit court in this case be, and the same is hereby, reversed and annulled. And it is further ordered, that the said cause be remanded to the said circuit court, with directions to issue a venire facias de novo.
NOTES
[(a)] Citing 2 Overt. 44, 218, 186, 365, 358, 242; 1 Ibid. 362, 467, 445; 1 Hayw. 24, 62, 65, 95; 2 Ibid. 80; 3 Mass. 379; 2 Tidd's Pract. 936; 2 Binn. 223, 329; 1 Ibid. 40; 4 Dall. 226; 1 Wash. 313; 9 Johns. 58, 179.
[(b)] Citing 1 Overt. 119, 126, 436; 2 Ibid. 40; 5 Hayw. 294; 1 Ibid. 176; 4 Wheat. 77.
[(a)] The statute of Tennessee of 1797, c. 47, made to settle the true construction of the statute of limitations of North Carolina 1715, provides, "that in all cases, whenever any persons or persons shall have had seven years' peaceable possession of any land, by virtue of a grant, or deed of conveyance founded upon a grant, and no legal claim, by suit in law, by such, set up to said land, within the above term, that then and in that case, the person or persons, so holding possession as aforesaid, shall be entitled to hold possession, in preference to all other claimants, such quantity of land as shall be specified in his or their said grant, or deed of conveyance founded on a grant as aforesaid." The act then proceeds to bar the claim of those who shall neglect, for the term of seven years, to avail themselves of any title they may have.

Under the statute of North Carolina, it had been determined by the courts of that state, that it afforded protection to those only who held by color of title. And under the act of Tennessee, it is settled by the decisions of the local courts, and of this court, that it does not, like other statutes of limitation, protect a mere naked possession, but that its operation is to be limited to a possession of seven years, acquired and held under a grant, or a deed founded on a grant. Patton's Lessee v. Easton, 1 Wheat. 476.