Green, J.
delivered the opinion of the court.
The first question for our consideration, is, as to the authority of Joseph Cobb, to make leases of the lands of Catha-rine and John Blair, and how far those leases created any obligation on the part of the tenants to hold for Blair.
It is laid down in 3 Bacon Abr. Guardian G. 414, 15, that a guardian for nurture, has only the care of the person and education of the infant, and has nothing to do with his lands, and that he cannot make a lease of them for years, either in his own name, or in that of the infant. The same principle is laid down in Comyn on the Law of landlord and tenant 45: 6 Law Lib. 25, and is recognised in the case of May vs. Calder, 2 Mass. 55, where it is determined that a lease of *469 an infant’s land, by his father, as natural guardian was void. The court there say, that the statute of Massachusetts requiring general guardians to give bond, &c., forms an additional reason why a natural guardian should not be permitted to meddle with the estate. This court, at the present term, in the case of Kegler vs. Miles, (MS.) decided that a guardian for nurture, has no authority to receive the money in satisfaction of a judgment obtained by him for the infant, and to give an acquittance therefor, and the defendant notwithstanding he had paid the guardian, was decreed to pay the amount again. From these authorities it is clear that Cobb had no power or authority to act for the Blair’s, who were then infants, when in 1809, he made his leases in their name to the tenants, whose possession is claimed as the possession of Blair. As these leases were made without authority and were void, they created no obligation on the Blair’s to comply with their conditions. The obligations of landlord and tenant, are reciprocal. The landlord in making a lease for years, contracts that the lessee shall have the possession and profits of the land for the time limited, and the lessee is bound to hold possession for the landlord, and to recompense him by the payment of rent or other consideration. Was Blair, it may be asked, bound to keep these tenants in possession according to the terms of the leases made by Cobb. The- authorities above cited show clearly that he was not. Blair might have treated them as wrong doers, and turned them out of possession at pleasure. As the Blair’s were under no estoppel to disavow these leases, we will inquire whether the tenants were estopped to disregard them.
Lord Coke’s first rule, Coke Lit. 352 a, for makingthe reader more capable of the learning of estoppels, is, “that every estoppel ought to be reciprocal; that is, to bind both parties.” And this, he adds, is the reason that a stranger shall neither take advantage of, nor be bound by the estoppel. InBacon’s Abr. vol. 4, page 190, it is laid down, that if a man takes a lease for years of his own lands, from an infant or feme covert by indenture, this works no estoppel on either part, because the infant or feme, by reason of their disability to contract, are not estopped, therefore, neither shall the lessee be *470 est0PPeclj because all estoppels ought to be mutual. So, in same authority, it is said, if a man take a lease for years of his own land by patent from the King, rendering rent, this shall not estop the lessee, as an indenture between common persons in such cases would do, because the King cannot be estopped, and if he be not estopped, neither shall the lessee, because all estoppels, ought to be mutual.
From this view of the subject it is clear, that if John and Catharine Blair were not estopped by the leases executed in their behalf by Cobb, so neither were the lessees. But from the above authority from Bacon, it is shown, that if they, being infants, had made the leases themselves, they would have created no estoppel on either side. Surely then, it cannot be contended, that a lease made for them by Cobb without authority, and merely acting as their friend, would place either the infants or the lessees under any estoppel. If this view of the subject be correct, the circuit judge erred in telling the jury, “that if while these tenants were in possession under the lease made by Cobb, they took leases from Ross, it was a fraud on Blair, for, that they could not thus change ■their relation.” As they were not estopped by those leases .to liave set up a title in themselves, so neither could they be estopped to lease from, and hold under another.
The relation of landlord and tenant did not exist between them and the Blairs, and they could violate no duty arising out of that relation, in taking the lease from Ross.
2. The court also erred in telling the jury, “that a possession by a tenant of part of the interference covered by the one thousand acre grant, would be a possession to the extent of the boundaries of that grant; although the lease to him was only fifteen acres, it would be a possession taken by Blair by virtue of his grant.” The making a lease of part of a tract of land is certainly no greater act of dominion, than a sale of the same part would be. But in the case of M'Clung vs. Ross, 5 Wheat. Rep. 123, it is held that a sale of part, of which the purchaser took possession, although coupled with an agreement to hold the balance for the vendor, constituted no possession of the part not sold and actually possessed. So neither would a lease of fifteen acres, defined by prescrib- *471 écí boundaries', possessed by the lessee, be a possession of any other part of the tract than the fifteen acres. 10 Peter’s Rep; 444. But if a lease were made of a tract and no boun-darie’s were inserted circumscribing the tenant, then a possession tinder such lease, would be a possession of the whole tract,- although the lessee might actually occupy only fifteen acres.
3. We think the court also erred in permitting the deposition of Alexander' Blair to be read without proof that he had made the statements contained in it. The matter of the deposition was proper enough to be given in evidence, but the certificate of the magistrate who took the deposition, could not give it verity as the statement of Blair, except in the suit in which it had been taken. In order to have justified the reading of it in this case, it should have been- proved' to have been his statement by some one of those who heard him make it.-
Several other interesting questions have been debated with great force and ingenuity in this case, but as we think the circuit court did not err except as to the foregoing propositions, we deem it unnecessary to enlarge further in the case.
Reverse the judgment and remand the cause to White county for another trial.
Judgment reversed.