Green, J.
delivered the opinion of the court,
This case presents the question whether a defendant who is sued in ejectment is protected in any case by the second *263 section of the statute of limitations of 1819 beyond his actual enclosui’e.
It is contended with great earnestness by ibe counsel for the plaintiff in error that, by the second section of the act, there is no difference between the extent of protection afforded a party who has no claim to the land, but is a naked trespasser, and that which one enjoys who holds the possession claiming it by virtue of the highest muniment of title known to the law short of that “purporting to convey an estate in fee simple;” and that a possession of land taken and held under and by virtue of a title bond defining the boundaries of the tract cannot be construed to extend beyond the actual enclosure of the possessor. We cannot concur in this construction of the statute. By the first section it is provided that where a party shall have had possession of land more than seven years by virtue of an assurance purporting to convey an estate in fee simple, and no suit shall have been effectually prosecuted for the same within said time, the person so holding possession shall be entitled to keep possession of such quantity of land as shall be specified in such assurance of title against all persons whatsoever. As, in the first section, it is expressly provided that a party in possession for seven years shall be protected to the entire extent of the boundaries described in the deed, we cannot suppose that the legislature intended to adopt, under the second section, a different rule as to the extent of possession in the case of a party who is in the actual occupation of part of a tract the boundaries of which are described in a title bond or unregistered deed, by virtue of which he entered and holds possession. That the second section does not expressly enact that a party shall be protected in the enjoyment of all the land included in the assurance, by virtue of which he holds it, is to be accounted for by the fact that the legislature knew it would apply to many cases in which neither party would be in possession of the land sued for. Such was the case of Dunlap vs. Gibbs, 4 Yer. 94, and Neal vs. East Tennessee College, 6 Yer. 190.
Numerous other cases will arise for the application of the second section where the question of possession will not be *264 involved; and hence the language employed in the fhst sec-would have been most inappropriate m a large class ot cases proper for the application of the second. Having too, imrue(jiately before, declared that the possessor should be protected as to all the land included in his assurance, it is fair to presume that, in an appropriate case for the application of the principle, they intended the second section to be construed by the same rule, especially as their silence (as we have seen above) is so satisfactorily accounted for.
As to the constructive possession beyond the extent of actual enclosure which a lease or title bond, by its own proper force, draws to itself, it has frequently and upon general principles been determined that if a man have a grant for a large tract and sell a part, executing to the purchaser a title bond describing such part by metes and bounds, and the purchaser take possession and hold the land so purchased for seven years, he will be protected under his vendor’s grant against an older title to the extent of the boundaries described in the title bond. M'Clung vs. Ross, 5 Wheaton, 123. So if a man lease part of a tract for which he has a grant or deed describing such part by metes and bounds, his tenant’s possession, having been held seven years, will extend to the boundaries of the lease and to that extent and that only protect the landlord’s title against a person claiming under an older grant. Ross vs. Cobbs, 9 Yer. 471: 10 Peters’ R. 444.
In this and similar cases where a party takes possession of land claiming under a title, legal or equitable, an estate in fee simple or for years only, the possession of part is construed to be possession to the whole extent of the boundaries described in his assurance of title.
The act of 1819, sec. 1, by its express provisions, and the act of 1797, by judicial construction, gives protective efficacy to the possession under a deed or assurance purporting to convey a fee to the limits for which it calls, without reference to the title of the person making such assurance or its con-nexion with the grant; and in like manner, therefore, the possession under the provisions of the second section, by virtue of a title bond, articles of sale, or informal muniments, will be effectual to the limits claimed and called for, without re *265 ference to the title of the person who may confer upon such possessor his claim, or the connexion that may exist between that claim and any other title. Possession is a matter of le--gal construction. A man can actually occupy but a few inches of land at any one time. The law, therefore, to protect him in the enjoyment of that over which he exercises dominion and considers as his own, has given to a constructive possession all the force and efficacy which belongs to an actual occupation; hence, a tenant who has a lease of which he is in possession may maintain trespass for cutting timber on the lands within the boundaries of his lease; taking possession of part, and claiming to certain boundaries described in his deed, title bond or lease, the law considers him in possession of the whole.
If, for all these purposes, a possession of part shall be deemed a possession of the whole tract, it cannot be conceived that the legislature, in enacting a law expressty to protect possession, should have intended to protect to the extent only of the actual -occupation or enclosure. In this particular there is no difference between the object of the first and second sections. The act of 1819 was passed at a time when the State was agitated from centre to circumference by the great number of suits then pending, involving the construction of the act of 1797, and a contest existed at the bar and on the bench upon that subject, so that, in the language of the preamble, no man knew “from whom to take or buy land.” The great object was to quiet titles by the protection intended to be afforded to the possessor of land. But although it was intended to protect every possessor who may be found to have been in the uninterrupted enjoyment of land for seven years, the character of that protection would depend upon the description of title under or by virtue of which the party may claim. If it purport to vest in him an estate in fee simple, the first section was intended to give to his possession all the energy of the act of 1797, conferring on him a complete and valid title to the land against all the world; but if his possession were taken by virtue of an assurance, which did not purport to vest in him an estate in fee simple, but which described by metes and bounds the lands *266 so claimed, the second section, without conferring on him the title, constitutes, like the act of 1715, a bar to the action of another person against him. As, therefore, by the uniform construction the courts of North Carolina gave to the act of 1715, a claimant’s remedy against a possessor, after seven years uninterrupted enjoyment, was barred to the whole extent of the boundaries described in his “color of title;” so the second section of the act of 1819, in using language of like import, must be understood as having been intended to. produce a like effect.
The act of 1819 re-enact^ all the provisions of the acts of 1715 and 1797, and extends the operation of the first section even beyond the popular construction of the act of 1797; besides, by its provisions, so precise and definite, forever removing all doubt as to the application of its principles. The second section in like manner is more comprehensive than the act of 1715, making provision for many cases not included in that act, but certainly providing for every case it would have protected, and to that extent the whole protec-» tion would have been afforded. •
These two acts (1715 and 1797) thus form the basis of the act of 1819, and while its second section is similar in its language and identical in its mode of operation with the act of 1715, its framers must-have intended that it should operate to protect such possession as by the construction of the courts the act of 1715 was made to protect. It may be observed too, that as our courts have gone further iri the construction of the second section of'the act of 1819, in the oase of Dyche vs. Glass, 3 Yer. 397, as we believe, with the unqualified approbation of the profession, than the courts of North Carolina went in the construction of the act of 1715, it would be strange inconsistency if, upon the question now under consideration, we were to stop short of the protection which was afforded a possession under the act.
We have thought fit to say thus much in illustration of our construction of this statute because the argument against it has been pressed with so much earnestness and ability, and because it is insisted, notwithstanding the decisions heretofore piade, It is true the precise state of facts now under considr *267 eration has not existed in any preceding case, but whenever the question has come up for adjudication the views we now entertain have been expressed by the court; The case of Dyche vs. Glass was the first in which the court was called upon to give a construction of the second section of the act of 1819 now under consideration. It is true in that case Dyche was protected to the extent of his enclosure only. And why? Because he had not been holding seven years by virtue of any paper title whatever. He could only be regarded, therefore, as a naked trespasser. There was nothing to designate the extent of his possession but his enclosure; in fact he hftd no possession for seven years beyond his enclosure, consequently he Gould only be protected to that extent. But the Chief Justice, in delivering the opinion of the court, makes the following remarks: “The second section was intended to protect possession under title bonds, unproved and informal deeds, not subject to be registered or not of record in legal form, and every variety of claim supposed by the possessor to communicate title, legal or equitable, evidenced by writing, whether in fact of any validity in law or equity or not.” Evidently, his honor, by this language, meant that the protection which¿n the specified cases was intended to be afforded, should extend to the boundary described in such title bond, unregistered deed, &c. As evidence that such was his meaning, in a late decision in the case of Scott’s lessee vs. Reid, in the federal circuit court at Nashville, (to which he has been transferred,) he instructed the jury that unregistered deeds might be considered “as informal paperss furnishing evidence of the boundaries and extent of the possession of the defendant, under the second section of the act of 1819.”
In the case of Jones vs. Perry, 10 Yer. 59, the court say “we think it clear that a party who is in possession for seven years of a tract of land, holding it adversely under and by virtue of an unregistered deed, is protected by the second' section of the act of 1819 to the extent of the boundaries of his deed.” This is'a direct decision of the question. The argument that the extent of Perry’s possession was not in issue is made upon a misconception of the case. .It is true *268 the bill was brought on the ground that Perry’s deed was ■ void, and to remove the cloud from his title; but as an incident to the decree which was mainly sought, the court had jurisdiction to put the complainant in possession, so that the question as to the extent to which Perry’s unregistered deed protected him against J. R. B. Jones, one of the complainants, was directly involved. The court declined giving an opinion as to whether an unregistered deed “purports” to convey an estate in fee simple, but decided that Perry was protected to the whole extent under the second section.
In the case of Whitesides vs. Singleton, (MS.) decided last winter at Nashville, it was held, on the authority of Jones vs. Perry, that an unregistered deed would protect a party to the extent of the boundaries described therein.
These cases settle the question beyond controversy, if the views here taken needed support from precedent, so that ■this case might have been rested upon them alone as authority¿ but we have presented our views at large that all doubts may be removed. Let the judgment be affirmed.