Wright, J.,
delivered the opinion of the Court.
This action of ejectment was commenced the 25th of February, 1853, to recover 1,632¿ acres of land, a part of Grant, No. 388, issued to James Galloway, by the State of North Carolina, on the 17th of December, 1794. The, plaintiffs sue as the devisees of William M. Marr. All of them, except Tennessee E. Tenable, failed in the action, and she recovered an undivided eighth of the tract, less 100 acres in its South-East corner, in the possession of Hardin Mayberry, who was not sued. They all appeal to this Court, Their title is denied, as follows: Constant Perkins, of Pittsylvania County, in the State of Virginia, with said Galloway and others, residing in North Carolina and Virginia, prior to the year 1790, held certain lands in partnership, including the grant above named, containing 5,000 acres in Maury County, Tennessee. Perkins, who died in 1790, before the issuance of the grant, by a codicil to his will, devised the one-half of his part of said grant to his brother, John Marr; the one-fourth thereof to his brother-in-law, Joseph Scales, and the remaining one-fourth to Elizabeth Perkins, the daughter of his brother, Peter Perkins.
*492 John Marr afterwards died, and his share in this grant came to his children, either by devise or descent. The time of his death is uncertain; but it was prior to the year 1810. It is stated in argument, that ho left eight children; but from the record, we can ascertain but seven, one of whom was William M. Marr, his eldest child, and the ancestor of the plaintiffs. The tract of 5,000 acres, was, by a decree of the Court of Equity of Rockingham County, State of North Carolina, partitioned among the owners; and James E. Galloway, the heir-at-law of James Galloway, the grantee, was directed to convey the 1,632-| acres to William M. Marr, in trust for the devisees of Constant Perkins — that being the share of said Perkins in the grant. And James E. Galloway did, accordingly, under the decree, on the 1st of May, 1828, make the conveyance as directed, by metes and bounds. William M. Marr thus became invested with the legal title in fee in seve-eralty to the said tract of land, holding one-half thereof for the seven children of his father, himself inclusive; one-fourth thereof for the heirs of Joseph Scales; and the remainder for the heirs of Elizabeth Perkins; the said Joseph and Elizabeth, having also, died.
The said William M. Marr died the 5th of September, 1831; and in his will, after devising to his wife a life-estate in certain portions of his property, he gave the residue of his estate, including the remainder in that given his wife, to his children. She has since died. He left the following children: William M., born the 5th of January, 1810; Bethenia A. G., the 2d of September, 1812; Agatha S., the 31st of May, 1814; Daniel P., the 26th of November, 1815; John H., the 15th of September, 1818; Elizabeth S., the 8th of November, 1820; George W., the *493 16th of September, 1822; Nicholas L., the 2d of August, 1824; Sarah V., the 29 h of July. 1826; Mary E. J., the 9th of September, 1828, and Tennessee E., the 3d of January, 1831.
Bethenia A. G-., married Samuel B. Ewing, the 28th of January, 1829, and died the 7th of August, 1843; Agatha S., married S. Inge, the 11th of December, 1832, and he died the 23d of August, 1850, she surviving him; Elizabeth S., married John D. McLemore, the 10th of March, 1836, and died May the 17th, 1842; Sarah V. married Thomas L. Carson, the 7th of April, 1847; Mary E. J., Robert H. Marr, in 1850; and Tennessee E., Nathaniel Venable, the 16th of December, 1852; and they, with their husbands, are yet alive. The said William M., died August the 7th, 1833; John H., the 23d of October, 1840, and George W., the 4th of April, 1849.
The said Agatha S., Daniel P., Nicholas L., Sarah V., Mary E. J., and Tennessee E., constitute the plaintiffs in this action ; and it is agreed that, at the time it was instituted, they were the only heirs of William M. Marr, Sr., save the children of Elizabeth S. McLemore, who are now living, and not parties to this suit. It does not appear whether Samuel B. Ewing and John D. McLe-more, are dead or alive ; nor whether Mrs. Ewing had issue, though under the agreement, we must take it, that if she had, it is dead.
To resist a recovery, the Statute of Limitations and lapse of time, are relied on. At the institution of the suit, the defendant, Tabitha Hardin, the widow of Pleasant G. Hardin, who was in possession, had in cultivation, and under fence, about two hundred acres of the tract, the defendant, Gilliam, about one hundred, and the de *494 fend ant, Box, ’ about fifty. The residue of the tract is unenclosed, and chiefly valuable for its cedar timber. At what particular periods these clearings were made, does not appear. Previous to the partition under the decree, and while the five hundred acres mere claimed by the devisees of Constant Perkins, and the other owners, three leases, two of ten acres each, and one of eighteen acres, were taken by Land Pox, John Pox and one Aydlett respectively. The dates, or terms of these leases, do not appear. They were made by Robert or Henry Scales, two of the children and heirs of Joseph Scales, a devisee in the Will of Constant Perkins. A year or two after-wards, a lease of ten acres was taken of the same party, by one Heskitt, the term of which is not shown. They all adjoined, and are within what is now the possession of Mrs. Hardin. When Hcskitt's lease expired, it was renewed from Pannenas Williams, and when he died, fiom one Wortham. Both Williams and Wortham had become interested in the land, by purchase from a part of the devisees of Constant Perkins, and only claimed undivided interest according to their title. After the expiration of these leases, and about the year 1829, Pleasant Gt. Hardin succeeded to the possession, but upon what title, whether as lessee or purchaser, does not appear, but the probability is, from the proof in the record, that his possession was, at first, merely as lessee under the proprietors. On the 27th of July, 1835, C. H. P. Marr, one of the children and heirs of John Marr, conveyed his undivided interest of one seventh in the one thousand six hundred and thirty-two and one half acres, to Hardin ; and his brother, John Marr, had, in like manner, on the 21st of November, 1803, conveyed his undivided one- *495 seventh to Daniel Wortham. The defendants, Gilliam and Bos, derive their title from James D. Freeland, who, according to some of the witnesses, took possession by the occupation of the place, where Gilliam now lives, in 1828, stating, to use his own language: That he had purchase an interest in the tract, from one of the claimants. What claimant this was, is not known; but it is ■probable that it was either Thomas Wortham and Nancy, his wife, or David Wortham, as we find deeds from them to him, of date the 15th of December, 1831, and there is no evidence he made other purchases. The deed from Wortham and wife conveys an undivided interest under the Will of Parmenas Williams, who had acquired the share of Elizabeth Perkins, and the deed of Daniel Wor-tham embraces the share, or one-seventh of John Marr, which had been conveyed to him as above stated. In addition to the conveyance from C. H. P. Marr, Pleasant G. Hardin subsequent to the year 1881, and his widow and heir after his death, took deeds for other undivided interests, chiefly of the share of Joseph Scales, and it may be, in part, of the share of Elizabeth Perkins; but neither of defendants exhibit any evidence that they or those under whom they claim to derive title, have purchased any part of the share of John Marr, as derived under the Will of Constant Perkins, save the interests of G. H. P. Marr and John Marr, Jr., as herein before stated; and it is probable, though not clear from the proof in the record, that they did acquire the entire shares of Joseph Scales and Elizabeth Perkins.- The deeds to Pleasant G. Hardin, that to his widow and heirs, and those to the heirs alone, as well as the deeds to James D. Freeland, and the intermediate conveyances *496 from him, including those to Gilliam and Box, all, simply, in general terms, convey the undivided interests of the respective grantors in the one thousand six hundred and thirty two and one-half acres, and do not convey or assume to convey the entire tract, or any particular part of it in severalty, some of them having been executed within seven years next before the commencement of this suit. Of the same character, are the other deeds and title papers read in evidence executed anterior to the purchases, by Pleasant G-. Hardin and James D. Free-land. These deeds and title papers must be regarded as furnishing evidence that Pleasant G. Hardin and James JD.. Freeland, and the tenants under them, did not set up claim to the entire tract, as stated by some of the witnesses, but that it only extended to the shares or interests purchased in their undivided state, and which, of course, went to the boundaries of the whole tract.
A part of the enclosed land above mentioned, was used and cultivated for more than twenty years, before the suit; during all which time, the defendants and those under whom they claim, were in possession, beginning with the occupation of James D. Freeland and Pleasant G. Hardin, and during which time, they have cut and rafted timber to the boundaries of the tract; and, according to some of the witnesses, claimed the entire tract as their oion. There is evidence of a division line between James D. Freeland and Pleasant G. Hardin, by which they, and their families, held possession, but whether it was run or marked before the year 1848, is not clear. It is in proof, that Mrs. Hardin, after her husband’s death, gave in the tract for taxes. The witnesses had never heard of the claim of *497 the plaintiffs, or other claim than that of defendants, prior to the suit. It does not appear, otherwise than as is above stated, that the defendants denied the title of the plaintiffs, or that they had knowledge of any adverse claim by them. The plaintiffs did not reside in the vicinity of the land.
Now, what is the law upon these facts, and the relation which these parties sustain to each other ? Under the force of the decree, and the deed from James E. Galloway, the legal title in this property was vested in William M. Marr, merely as a dry trustee for the devisees of Constant Perkins, who were entitled to the absolute beneficial interest as tenants in common, and it was his duty to dispose of and convey the estate according to the directions of the cestui que trusts. Indeed, we are convinced the purpose was, that he should, at once, convey to each, their respective shares. It is obvious, therefore, that whatever might be his right against strangers, it was not expected that he should retain the exclusive possession in opposition to the equitable owners; and if one, or more of them, or their rightful vendees, took possession, it could not be held to be adverse to the trustee, or inconsistent with the common title: In Hill on Trustees, (3d Am. ed.,) 393-4, it is laid down as a rule, that for the same reason that the possession of the trustee is not usually a bar to the cestui que trust, the possession of the cestui que trust for however long a period, will not in general, displace the legal title of the trustee. At law, the cestui que trust is regarded as tenant at will to the trustee, and he cannot be ejected without a previous demand of possession. Therefore, until this tenancy is determined, there can be no adverse possession *498 between the parties. However, if there be a formal demand, or disclaimer of the tenancy by the cestui que trust, or he continue to deal with the estate in a manner inconsistent with its subsistence, he may doubtless, disseize the trustee, and thus acquire an adverse possession, upon which the Statute of Limitations will then operate. It must, however, always be a very nice and difficult question to determine, whether, and at what time, such an adverse possession on the part of the cestui que trust, has been actually acquired: Duke vs. Harper, 6 Yer., 280; Watson vs. Smith’s Lessee, 10 do., 476. There is another view of the case. The jury — upon the facts in this record — should have been instructed, that as to the equitable interests to which any of the defendants may have shown themselves entitled, they might presume a conveyance of the legal estate from William M. Marr, the trustee ;■ to that extent, not only defeating the right of the plaintiffs to recover, but investing the defendants with the legal title, so as, at law, to make them tenants in common with the plaintiffs. According to Hill on Trustees, 874 to 388, in support of a just title where, as here, it was the duty of the Trustee to convey — and there is sufficient reason to suppose he had done so — the presumption will be made. As where the equitable owner had acted or dealt with the property as if the legal estate were vested in him: this, when joined with possession, and length of time — though it seems by some of the authorities the two latter alone will not do — will be material as evidence to raise the presumption of a conveyance by the trustee. And the rule applies a fortiori where, as here, the legal estate is made use of by the trustee himsdf, to defeat, or oppose the title of the *499 cestui que trust; and in such a case, a Court of Law, in order to prevent the gross injustice attending the enforcing of such a claim, will take advantage of any circumstances, however inconclusive, in order to presume a conveyance. This presumption, as a general rule, will be made in form only of the person in whom the beneficial title is, for the time being, clearly vested. It will not be made in favor of a defendant who shows no other title to the premises which are sought to be recovered, than that of a mere naked possession. And hence, the plaintiffs should be affected by the rule, only so far as defendants may show clearly a beneficial title in themselves, or in some of them, as any other construction would be to defeat, not to support, a just title. The rule is founded in no resemblance to the doctrine of presuming a grant, &o., upon twenty years’ possession, but may take effect in a much shorter time, and indeed, without regard to time or possession, at all: England vs. Slade, 4 T. R., 682; Doe vs. Sybourn, 7 T. R., 2; Aiken et als. vs. Smith, 1 Sneed, 304.
James D. Freeland and Pleasant G. Hardin, and the other purchasers in possession, then, must be held to have become tenants in common with the plaintiffs, and this relation must be hold to have continued, unless shown, in some way, to have been destroyed. Among such tenants, each has the entire possession, as well of every part as of the whole; and the possession of one, or more, is the possession of all, and there can be no adverse possession or disseizin among them, but by an actual ouster.- It is not to be supposed, that these parties meant to assert an ownership to more than they were properly entitled to; and their possession will be construed to have been consistent *500 with right, unless there be demonstration plain, that it was claimed and held otherwise. That one tenant in common may oust his co-tenant and hold in severalty, is not to be questioned. But the sole, silent occupation by one, of the entire property, claiming the whole and taking the whole profits, without an account to, or claim by the others, accompanied with no act which can amount to an ouster, or give notice to his co-tenant that his possession is adverse, cannot be construed into an adverse possession. And this doetz’ino of adverse possession is to be taken strictly, and must be made out by clear and positive proof, and not by inference; every presumption being in favor of a possession in subordination to the title of the true owner: McClung vs. Ross, 5 Wheat., 116; 4 Dev., 223—290; 3 Howard, U. S. R., 674; 9 Johns. R., 164; Angell on Lim., 91-99; 1 Sneed, 279-286. It does not appear that the plaintiffs were refused their share of the profits, which it seems — without a denial of their title — is insufficient evidence of an ouster; though, if it were shown, as it is not, that they had made demand of their part, and the others had refused to pay, and denied'their title, claiming the whole, and still retaining the possession, then such possession would be adverse, and ouster enough: Angell, 94; Cowper, 217. Or, if some of the tenants in common, instead of conveying their undivided interests, as seems to have been done here, had made deeds of the whole tract in severalty, then the possession of their alienees and those claiming under them, would have been adverse to the right and title of the plaintiffs: Burton vs. Murphey, Taylor’s N. C. Rep., 259; Angell, 978; Peck’s Rep., 392-411; 3 Howard, U. S. R., 674. But, all the deeds appear to be precisely to the reverse. No doubt, so soon as the plain *501 tiffs had notice of the disavowal of their title by the defendants, and of the assertion of title to the entire tract for themselves, their possession, so far as it went beyond their title, became wrongful, and the plaintiffs might sue : Allyn vs. Mather, 9 Cow., 114. But, at what time was this? And is there any evidence of it, for a period of seven years before the suit? In the case in 3 Howard, it is laid down as the rule, that there must be some notorious act of ouster, or the adverse possession by the party entering, must be brought home to the knowledge or notice of the other tenants in common, before the act of limitations will operate.
It is, however, well settled, that the exclusive and uninterrupted possession by one tenant in common, of land for a great number of years — say for twenty or more— claiming the same as his own, without any account with his co-tenants, or claim on their part — they being under no disability to assert their rights — becomes evidence of a title to such sole possession; and the jury are authorized to presume a release, an ouster, or other thing necessary to protect the possessor; and the action of ejectment by his co-tenants, in such case, is barred. The presumption is an inference of fact to be drawn by the jury, to whom the evidence is to be submitted: 4 Dev., 223-290; Cowper, 217; 6 Cowen, 632; 1 Sneed, 279. It is made without any reference to our Statute of limitations, and in no analogy to it. The contrary is, sometimes, elsewhere, stated as the rule; but, it is obvious, that, with us, it must, in many particulars, stand independent of our Statute, and so we have held: 3 Sneed, 176. Upon the same ground, a grant from the State, a release of an equity of redemption, the payment of a bond, &c., are presumed. But, it *502 may be rebutted by the infancy or coverture of the plaintiffs, or by the intervention of a particular estate; the relation of the parties, or other facts, showing that the possession was not adverse to the owner, but by his permission or indulgence, or as his tenant. And this is so, whether the case be within the saving of the Statute of limitations, cr within that class of presumptions termed disputable, and which rests upon general principles of law, uninfluenced by the Statute: 11 Howard, U. S. R., 329; 3 Hum., 267; 2 Swan, 27; Angell on Adverse Enjoyment, 116-117. In the latter class, however, there seems to be this distinction : That, unlike the Statute of Limitations, disabilities may be allowed to cumulate in order to rebut the presumption; and where a subsequent disability of the owner of the estate, to sue arises, the period of disability is to be deducted from the twenty years, so that the presumption can only have effect by counting the time irrespective of the period of disability: Angell on Ad.v, Enj., 116, 117; 16 Johns. R., 210; 10 do., 414; 2 Cranch, 180; Watkins vs. Peck, 13 N. H. Rep., 260; 2 Yer., 193. The presumption, even if it could be said to have commenced running in the lifetime of William M. Marr, had not taken effect, because there had been no possession for the term of twenty years before his death, and it was arrested by the disabilities of his devisees : 13 N. H. Rep., 377.
As to the Statute of limitations, if the tenants in possession asserted a title to the entirety, when they were only entitled to undivided interests, and this assertion was so made as to oust and disseize the plaintiffs, their co-tenants in common, and give cause of suit, the extent and effect of such a possession, must, of *503 course, be determined by the nature of the title papers, under which the unfounded claim was asserted: and if made without any proper writing to define boundaries, must be restricted to the actual possession: Milford vs. Hardison, 3 Murph. R., 164. And, though it is certainly true, that where a deed, or other writing, relied on as giving color of title, contains no description of the land, so that nothing passes, it can never lay the foundation of an available adverse possession beyond the actual improvement; yet, we do not understand, as seems to have been the opinion of the Circuit Judge, that the deed, or writing, to have this effect, must, itself, give boundaries, or refer to a deed or paper that does: but, that if the deed, &c., by sufficient descriptive words, whether by metes and bounds, or otherwise, conveys an undivided interest in the grant or tract, or any particular part of it, the boundaries or locality of which are established and defined, either in law or in fact, so that they may be rendered certain, this is enough; Angell on Lim., (ed. of 1846,) 440; Jackson vs. Woodruff, 1 Cowen, 276; 3 Sneed, 329. And if such deed or writing, and possession under it be taken from a stranger, and not the owner of the share, that possession, as to this particular share, will be eo instanti, adverse to the true owner and his trustee; and they will be barred in seven years, unless saved by some disability.
The widow of Pleasant G. Hardin, cannot annex her own possession to that of her husband; and it was error, to hold that she could. This is so, whether she resided upon the land concurrently with him, or succeeded to the possession upon his death. The case of *504 Sawyer vs. Kendall, 10 Cushing’s Rep., 241, is a direct authority to this effect, and meets our approval.
The well settled rule, as laid down in that case, is, that to make a disseizin effectual to give title under it to a second disseizor, it must appear that the latter holds the estate under the first disseizor, so that the disseizin of one may be connected with that of the other. Separate successive disseizins do not aid one another, where several persons successively enter on land as disseizors, without any conveyance from one to another, or any privity of estate between them, other than that derived from the mere possession of the estate. Their several consecutive possessions cannot be tacked, so as to make a continuity of disseizins of sufficient length of time to bar the true owners of their right of entry. To sustain separate successive disseizins, as constituting a continuous possession, and conforming a title upon the last disseizor, there must have been a privity of estate between the several successive disseizors. To create such privity, there must have existed, as between the different disseizors, in regard to the estate of which a title by division is claimed, some such relation as that of ancestor and heir, grantor and grantee, or de-visor and devisee. In such cases, the title acquired by disseizin, passes by descent, deed, or devise. But, if there is no such privity upon the determination of the possession of each disseizor, the seizin of the true owner revives and is re-vested, and a new, distinct disseizin is made by each successive disseizor. The Court then declare, that inasmuch as the widow showed no deed or devise of the land to herself, by her husband, there was no privity between her and him. He occupied it du'r- *505 ing his life, not by right of his wife, but by virtue of his own act of disseizin; and that his wife could commit no act of disseizin, till her coverture ceased by his death; and, that the subsequent disseizin by her, was her own separate act, unconnected with the previous disseizin of her husband. It was further held, in that case, that the right of the wife to dower in land, of which her husband died seized, would create no sufficient privity of estate between them, to enable her to connect his possession with her own. The right of dower confers no title to any part of the husband’s land after his death, until assignment of dower is made. Until then, the wife has no seizin, or right of entry, in any part of the husband’s land, and the heir can well maintain his writ of entry against her, to which her claim of dower would constitute no defense. It is a mere right, which does not ripen into a title until some specific portion is set out, and assigned as dower.
The case of Vance’s Heirs vs. Fisher, decided by this Court, (10 Hum., 211,) went upon the same principle. It was there held, that the administrator, not being the representative of the real estate of his intestate, had no authority to dispose of, or deliver the possession of the same to another, and that the possession' thus acquired could not be united to the previous possession of the intestate, so as to create a continuity of possession; there being, in regard to the real estate, no privity between the intestate and the administrator.
In the case now before us, Mrs. Hardin exhibits no deed or devise from her husband to her of the land in question, and as we have seen, she can, as roidow, claim no privity with him. Neither does it appear that *506 the premises in dispute, have ever been assigned to lier as dower; and as was done in the case from Massachusetts, we decline to express any opinion as to whether such an assignment would create a privity of estate with the husband, in the land so assigned.
We think it results, also, from these principles and authorities, that the possession of the heirs of Pleasant G-. Hardin, whether they resided with him upon the land in question, at his death, or entered upon it immediately thereafter, may be united with his possession— whatever it was; and that, as between the different defendants, and those under whom they claim to derive title, whatever creates a privity of estate between them in respect of the land in question — as the relation of grantor and grantee, and the like — will enable them, also, to tack their premises. That this may be done, will also appear from the principles stated by Mr. An-gelí, in his work on the Limitation of Actions, (ed. of 1846, pages 446-7.) He says: There must be a privity of the estate, or the several titles must be connected, so that the possessions may each be referred to one entry, as in the case of landlord and tenant, or in the case of the heirs of a disseizor, as father and son. These make a continuity of possession. But, if one merely enters and commits a trespass, and then goes off, and another comes after him and commits a trespass, there is no privity between these persons, and no continuous possession.
But, if the successive possessions be connected in the manner before stated, they are not to be regarded as so many distinct possessions, on the entry of each successive disseizor; but they, by force of the privity, be *507 come one and the same continued possession, referable to the original entry and disseizin, and have the same effect as if there had been no mutation or transmission of the land.
This principle of tacking, or uniting successive possessions, does not depend upon the nature of the title papers, under which the possession is taken, and dis-seizin made. He, who enters under a conveyance from one who has no title, is as much a disseizor, as he who enters an unfounded claim of exclusive right, without any color of title whatever.
The estate gained by both is wrongful, and they are both equally wrong-doers: 1 Greenleaf’s Cruise on Real Property, 53-4, note 4; 5 Pet., 402; 11 do., 41. Every disseizin is a trespass, but every trespass is not a dis-seizin. A disseizin is, when one enters, intending to usurp the possession, and to oust another of the freehold, and either takes the profits, or claims the inheritance : 1 Greenleaf’s Cruise, 52-3. To use the language of the Court, in 11 Pet., an entry by one on the land of another, is or is not an ouster of the legal possession arising from the title, according to the intention with which it is done. If made under claim or color of right, it is an ouster; otherwise, it is a mere trespass. In legal language, the intention guides the entry, and fixes its character. And though such a disseizin or adverse possession, is always tortious, yet the common law attaches to it a variety of legal rights and incidents: 5 Pet., 402; Williams et ux vs. McMiley, 1 Cheves’ Law Rep., 200.
A complete title to lands cannot exist without 'possession; and when the owner of the estate loses this, *508 though he has the right of possession and of property, he loses something which the disseizor acquires. The first degree of title is said to be Toare possession, or actual occupation of the estate, without any apparent right or pretence of right to hold and continue such possession, as where one dissiezes another; and which is defined to be a mere naked possession, which may, of course, be defeated by the rightful owner; but in the meantime, till some act is done by the rightful owner to divest this possession and assert his tithe, such actual possession is prima facie evidence of a legal title in the possessor; and it may, by length of time and negligence of him who hath the right, by degrees, ripen into a perfect and indefeasible title. And though, in respect of the disseizee, the disseizor hath no right at all, yet, as against all other persons he hath ; and in this respect only, can he be said to have the right of possession: 2 Greenleaf’s Cruise, 127, 132. This possession, or position of the disseizor, from which, if he lives, and continues the occupation of the land, rights may be acquired, upon his death, is, by operation of the law, cast upon the heir, without his option : Cheeves’ Law Rep., 210; Smith vs. Lorillard, 10 Johns. Rep., 338.
It is laid down by Chief Justice Tilghman, says Mr. Angell, (447,) in giving the opinion of the Supreme Court of Pennsylvania, in Overfield vs. Christie, 7 Serg. & Rowles’ Rep., 177, that one who enters on land as a trespasser, and continues to reside upon it, acquires something which he may transfer by deed, as well as by dese'ent; and if the possession of such person and others claiming under him, added together, amounts to *509 the time limited by the Act of limitations, and was adverse to him who had the legal title, the Act is a bar to a recovery: Angell, 408, 447. By the term trespasser, as used by Chief Justice Tilghman, is meant one who enters upon and claims the estate, under such circumstances as to make him a disseizor $ not him who merely enters as a wrong-doer, without any claim of ownership or right in the estate.
Whatever may be the dicta in our own reports, we know of no adjudged case which contravenes the principle hereinbefore stated. Wallace vs. Hannum, 1 Hum., 443, raised the question, whether a possession for seven years, under the second section of the Act of 1819, gave a title to the land, so that a purchaser at a Marshal’s sale, under a judgment and execution against the tenant, could maintain ejectment against the assignee of the tenant, who had become possessed of the land under an unregistered deed after the expiration of the seven years, but prior to the rendition of the judgment. Tho Court decided that a party who had thus held possession had acquired a right of possession, but not the title, and expressly refused to say that an execution might not be levied on land so held; but, put the case upon the ground that Berry, the debtor, who had only a right of possession, had abandoned it, and transferred it to White, who occupied the land before the judgment was obtained against Berry, so that no lien was created upon his right, if, indeed, a lien could exist in such a case. Norris vs. Ellis, 7 Hum., 463, is no more than Wallace vs. Hannum, with the addition that seven years possession, under the second section of the Act of 1819, does not make a title which is subject to execution *510 sale; and that in a suit by the purchaser against the tenant he must fail, as he acquired nothing by the purchase. And to the same effect is Crutinger vs. Catron, 10 Hum., 24, which was ejectment by the owner against the purchaser, under a fi. fa., against one who had held possession for more than seven years, under the second section of the Act. Such possession, say the Courts, constitute a mere defense against a possessory action, which is lost the moment the possession is abandoned. No title is acquired to lands so held, but mere right of possession, which is not alienable nor descendible; and, of course, is not liable to the payment of debts, because it is no interest or estate in lands. The meaning of which is, as we take it, that if the possession be abandoned or lost, it cannot be regained against the rightful owner, cither by the tenant himself, or his heir, or any purchaser under him, whether by execution or otherwise, such a possession being a mere matter of defense; and that in a contest between the owner and purchaser at execution sale, the former will prevail.
But did the Court mean to say, that such a possession, or estate, so to speak, with the legal rights and incidents attending it, could not be transmitted by devise, descent, or voluntary transfer, when it was not abandoned, but continued, without interruption, in the devisee, heir, or purchaser, and sought to be used merely as a defense against the action of the owner? If so, the case did not call for it; and, as we have seen, it is not supported by authority. Such a possession or estate might very well be the subject of alienation or descent; and yet the purchaser, under a fi. fa., could acquire no interest or right which would avail him, *511 either as plaintiff or defendant, or put him in privity, in any way, with the tenant, whose interest had been attempted to be subjected.
Whether there be an adverse possession, or actual ouster, to which the foregoing principles are applicable, will, of course, be open for consideration, upon another trial of this cause.
As to the presumption of a grant, deed, <fcc., upon twenty years’ possession, we should have said, that contrary to the instructions of the Circuit Judge, this Court, at its last term at Nashville, in the case of John Scales vs. Mark R. Cockrill, held that the presumption arises, although the occupation had been by different persons, and no privity could by any means be traced between the successive tenants, much less is it requisite to establish such privity by deed. That the true principle is, that without reference to the manner in which the respective possessors are connected or succeed each other, if they are continued and connected in fact, without any liabilities, for twenty years, each claiming the ownership, in connection with his possession, without regard to the source from which each claims to have derived his title, the presumption will attach. And it follows, from this case, and the authorities cited, that to create the presumption, it is not necessary that the possession, either in its origin or its continuance, should be accompanied by deeds, or other writings; and they are only material to extend the boundary where a constructive possession is claimed beyond the actual occupation.
It will be seen, from the view we take of the case, *512 that the. charge of the Circuit Judge contains serious error, to the prejudice of both parties, for which the judgment must be reversed.
In the consideration of this cause, we have deemed it proper to regard, as before us, the Will and codicil of Constant Perkins, though the same were rejected as evidence; and, we think, properly, by the Circuit Judge, because we are satisfied of their existence, (and upon another trial, a copy may be so authenticated as to be free of all objection,) and because it is manifest the testimony they furnish is, to say the least of it, as important to the defendants, who had them rejected, as to the plaintiffs, at whose instance they come before us by bill of exceptions. It is enough now to say, that, upon the authority of Harris & Totten vs. Anderson, 9 Hum., 779, the fact that the Clerk’s certificate extends only to a copy of the Will and codicil, and not to the probate, is fatal.
There may bo other valid objections, but they can all be remedied, and we need not point them out. Nor have we, for the same and other reasons, deemed it worth while to consider the various objections, as well by the plaintiffs as defendants, to the admission of deeds, and other documentary testimony, during the progress of this trial. The law which governs the admission of such evidence is plain and well settled; and upon another trial, the needful title papers may be fully perfected, as well by the one side as the other, and the defendants may be enabled to show how far they have acquired any of the shares of the devisees of Constant Perkins, in the land in question. We do not, of course, *513 conclusively adjudge this matter the one way or the other; but we may remark that the deraignment of title to many of the shares, as claimed by the' defendants, is very defective.
Judgment reversed, and cause remanded.