[EJECTMENT.  EVIDENCE.  PRACTICE.]

## CHIRAC and Others *against* REINICKER.

A counsel or attorney is not a competent witness to testify as to facts communicated to either by his client, in the course of the relation subsisting between them, but may be examined as to the mere fact of the existence of that relation.

The action for mesne profits may be maintained against him who was the landlord in fact, who received the rents and profits, and resisted the recovery in the ejectment suit, although he was not a party to that suit, and did not take upon himself the defence thereof upon the record, but another did as landlord.

A recovery in ejectment is conclusive evidence in an action for mesne profits against the tenant in possession, but not in relation to third persons.  But where the action is brought against the landlord in fact, the record, in the ejectment suit, is admissible to show the possession of the plaintiff connected with his title, although it is not conclusive upon the defendant in the same manner as if he had been a party on the record.

Amendments to the pleadings are matters in the discretion of the Court below.  Error will not lie to this Court, on the allowance or refusal of such amendments.

Variances between the writ and declaration cannot be taken advantage of in the Court below, after plea pleaded.

*Quære*, Whether by the modern practice such variances can be taken advantage of at all?

ERROR to the Circuit Court of Maryland.

This was an action of trespass for mesne profits, brought by the plaintiffs in error, Chirac and others, against the defendant in error, Reinicker, in the Court below.  The plaintiffs had recovered judgment, and possession of the premises, in an ejectment, in which one C. J. F. Chirac pray-

ed leave of the Court, as landlord of the pre-
mises, to be made defendant in the place of the
casual ejector, and was admitted accordingly
under the common consent rule.   At the trial of
the present suit, the record of the proceedings
in the ejectment were offered by the plaintiffs as
evidence to maintain this action ; and they then
offered to prove, by the testimony of R. G. Har-
per, and N. Dorsey, esquires, that the defendant
had retained, and paid them, to conduct the de-
fence of the ejectment for his benefit, and also
propounded to these witnesses the following
question : Were you retained, at any time, as at-
torney or counsel, to conduct the ejectment suit
above mentioned, on the part of the defendant,
for his benefit, *as landlord of those premises?*
This question was objected to by the defendant's
counsel, as seeking an improper disclosure of
professional confidence ; and was rejected by
the Court.   Whereupon the plaintiffs excepted.

The plaintiffs then gave in evidence certain
deeds and patents, by which, and the admissions
of counsel on both sides, the title to the premises
in question was vested in John B. Chirac, de-
ceased ; and also read in evidence certain depo-
sitions to prove who were the heirs of J B. Chi-
rac ; and also offered the record in the ejectment
to prove Maria Bonfils to be one of the heirs,
and then offered to prove, *by parol evidence,* that
the defendant was, in fact, landlord of the pre-
mises at the commencement, and during the pro-
gress of the ejectment, and had notice of the

Chirac
v.
Reinicker.

same, and retained counsel to defend the same, and received the rents and profits thereof during its progress; which last mentioned evidence the Court refused to admit; and the plaintiffs excepted to the refusal.

The plaintiffs then offered to prove the same facts, (not saying by parol evidence,) with the additional fact that counsel did defend the same action for the benefit of the defendant. This evidence was also rejected by the Court, and constituted the third exception of the plaintiffs.

The fourth exception taken by the plaintiffs, related to the proper parties to the action. The original plaintiffs in the suit were Anthony Taurin Chirac, Mathew Chapus, and Anna Maria his wife, Mathew Thevenon and Maria his wife, and Maria Bonfils, the same persons having been plaintiffs in the ejectment. Pending the suit, the plaintiffs obtained leave to amend their declaration, and amended it, by introducing the name of John B. E. Bitarde Desportes, as husband of the said Maria, called, at the commencement of this suit, Maria Bonfils. No objection was taken to this amendment, and the defendant pleaded the general issue to the declaration so amended. The evidence of title of John B. Chirac, deceased, having been introduced, and, also, evidence to prove that Anthony T. Chirac, and the female plaintiffs, were heirs at law of John B. Chirac, the defendant prayed the Court to instruct the jury, that they ought to find a verdict for the defendant, unless they were satisfied that *all* the plaintiffs were the *proper heirs* at law

of John B. Chirac; which direction the Court accordingly gave.

The fifth exception related to the supposed variance between the writ and declaration, by the amendment, introducing the husband of Maria Bonfils as a party upon the record. The Court held the variance fatal under the general issue.

Mr. *D. Hoffman*, and Mr. *Mayer*, for the plaintiffs in error, argued, 1. That the rule as to professional secresy forbids disclosures by the counsel of matters communicated by the client, after the engagement of counsel, and relating to the merits, or grounds of prosecution or defence of the suit. But that the mere *fact* of the engagement of counsel was out of the rule, because the privilege and duty of being silent, does not arise until that fact be ascertained. The concealment of the real client, who may be the party essentially interested, may be part of the client's policy, and be within the client's instructions to his counsel. But the client's injunction of secresy, *per se,* would not make secresy lawful in this respect; and it is, therefore, a *petitio principii* to say, that the counsel shall not tell who really employed him, merely because it happened to be the direction of his client, and his client's view, to conceal the fact. The law would authorize a fraud on its own rules, if it would determine otherwise; and the pretension of the defendant is counter to the whole policy of the rule, as to professional se-

1826.

Chirac

v.

Reinicker.

cresy.[a] The very refusal to answer, implies the affirmation of the witnesses being employed by the defendant as counsel.

2. The defendant was liable, in this action, if he had notice of the ejectment, and was, as landlord, interested in the result of it. He might, even at common law, have been made defendant; but the statute of 11 Geo. II., in force in Maryland, explicitly allows it to him. He shall not screen himself from responsibility, because he had artifice enough to waive appearing, and to let an uninterested person figure as defendant in his stead. The lessor of the plaintiff may sue for mesne profits, and the actual tenant shall be liable, although the judgment in ejectment is obtained against the casual ejector only; and in reference as well to the defendant as to the plaintiff in such a suit, the Court disregards the fiction of the ejectment cause. He is answerable for the mesne profits who has received them, and has had an *opportunity* of defending his pretensions in the preliminary ejectment. The ejectment suit is founded on a fiction. Fictions are under the control of the Courts who use them. They will be moulded and applied to the views of justice, and according to reason—for they take their rise from the equity of the law : *In fictione juris subsistit equitas.* The au-

a 7 East. Rep. 357. in note.    4 East. Rep. 759;    4 Espi. N. P. C. 23.    2 Esp. N. P. C.    Bull. N. P. 284.    4 T. R. 432. 752.   17 Johns. Rep. 335.   18 Johns. Rep. 330.   Norris's Peake, 250, 251, 252.    3 Johns. Cas. 198.    13 Johns. Rep. 492.

thorities sustain all these positions.[a] Before the statute of 11 Geo. II., regulating the appearance of landlords as defendants in lieu of the casual ejector, a judgment in ejectment was habitually set aside, where, upon the complaint of the landlord, it appeared, that he had had *no notice* of the suit. Where a party sells a chattel with warranty of title, notice to the vendor, of a suit against the vendee for it, is sufficient to bind the vendor by the verdict or judgment in that suit. One obtaining possession of land, while an action of ejectment is pending, is answerable for the mesne profits during his occupation, whether proved to have had notice of the action or not; constructive notice then sometimes implicates a third party in this suit.[b] All these rules are calculated to prevent an evasion of the statute, allowing landlords, not in actual possession, to be actors in the eject-ment suit, and to keep the fictions of law to their original purposes of justice. Our claim is clear of the point of *Lifford's case*, in 11 *Co.* 51.; though according to the decisions in Massachusetts, we might rest this suit even upon that point.[c] Before the statute of Marlbridge, 52 Hen. III., damages was not recoverable in any

1826.

Chirac
v.
Reinicker.

a 1 *Burr.* 667. *Runningt. Eject.* 192, 193. 198. 200, 201. *Adams' Eject.* 328. 337. 2 *Johns. Cas.* 438. 3 *Camp.* 455. in point, and inaccurately stated in *Adams on Eject. ;* the notice of the suit to the landlord not being required, as Adams states, to be by service of the declaration in ejectment. 2 *Burr.* 1290. 7 *T. R.* 108.

b 13 *Johns. Rep.* 447. 1 *Harris and Johns. Maryland Rep.*
c *Stearnes on Real Actions*, 416.

real action, except against the disseisor himself, and then only in the assize of novel disseisin.' Hence the practice for the disseisor (similar in principle to the attempt of this defendant) to enfeoff persons to act as defendants, who were not responsible. To prevent this abuse, the statute was passed, making all pernors of the profits responsible in real actions for damages.[a] But the action of ejectment, being a personal action in its origin, there was no need of a statutable provision to authorize an award of damages in it. It has taken the place of the real actions of common law. Reinicker, claimant of the fee, must be regarded as in possession; and his tenant's possession was his.

It is true, that Chirac appeared as landlord in the ejectment cause. But our purpose is, to show that Reinicker appeared by another; and though that other also assumed his (Reinicker's) title, that circumstance serves only to aggravate the fraud attempted upon the law, and to show the more conclusively, that Reinicker waived his privilege of defending in his own name, and by candidly announcing his interest on the record. We are not estopped, then, by C. J. F. Chirac's usurpation of the title of landlord, as well as the part of a defendant. If this action were even against him, we should be compelled to prove him landlord, notwithstanding his pretension to the character by appearing as landlord. His appearing might be relied on to prove his being landlord, but only

a *Stearne's Real Act.* 390.

as a circumstance, and as evidence, and not as an estoppel. We admit, that a party, to be liable for mesne profits, must be a trespasser; and we meant to prove Reinicker, by privity, to be a trespasser. The case in 7 *Term Rep.* 108. shows, that if the husband there had had notice of the ejectment, he would have been answerable for the mesne profits.

3. The action for mesne profits being the mere sequel of the recovery in the ejectment cause, the record of that recovery is the proper evidence to show the lessors of the plaintiff entitled to the mesne profits so as they are claimed within the terms of the demise in the ejectment. If profits antecedent to the term are asked, then the plaintiffs cannot rely on the ejectment recovery as conclusive evidence, but must prove their title to the land anew, and again open the merits of the ejectment cause. The claim for mesne profits here keeps within the limits of the ejectment demise, and we had no occasion, therefore, to prove our title otherwise than by the record of recovery in the ejectment.[a] Although the husband, who did not appear as a lessor of the plaintiff, is joined in this action with his wife, who was a lessor, still the record of the ejectment is evidence for us, since the husband is no new party in *interest*. If necessary, this might be enforced by analogy from the writ of re-disseisin in the

a Runningt. Eject. 492 to 497. Skinn. 247. Salk. Rep. 260. Bull. N. P. 87. 1 Burr. Rep 665. Strange's Rep. 960. Cowp. Rep. 243. Dougl. Rep. 584. Adams' Eject. 329. 333, 334.

1826.

Chirac
v.
Reinicker.

case of a similar change of parties. The addition of the husband, at the utmost, only imposed on us the duty of proving the marriage.

4. A variance between the writ and declaration could only have been taken advantage of upon oyer of the writ, and plea in abatement.[a] Oyer will not now be granted, and such a plea cannot, therefore, obtain. Nor will the proceedings be set aside for irregularity, on account of such a variance.[b] Even supposing, that for this defect the party might have refused to plead, or otherwise have made the objection available, it is too late now since he has pleaded the general issue.[c] A variance of this kind could once have been taken advantage of in England upon writ of error; but that cannot now, since the statute of jeofails, be done there; nor in Maryland, since her act of 1809, ch. 153. Where the writ is, according to the ancient practice, fully recited in the declaration, advantage might be had of the variance on demurrer. But that is not the case here.[d] The recital of the writ in the declaration is unnecessary; and, when made, as in this instance, is to be rejected as surplusage.[e]

a *Stephens on Plead.* 69.   *Chitt. Plead.* 439. 2 *Wils. Rep.* 85. 395.   2 *Salk. Rep.* 658.

b 1 *Bos. and Pul.* 645.   6 *T. R.* 364.   *Com. Dig.* Abatement, G. 8.   *Bac. Abr.* Abatement, H. 1.

c 1 *Bos. and Pul.* 383. (a decision founded on the statute, allowing a plaintiff, in certain cases, to enter an appearance for a defendant, and proceed to judgment.)

d 1 *Saund.* 318. *in notá.*

e 1 *Saund.* 318.   *Keb.* 544.   2 *Lord Raym.* 908. 1 *Strange's Rep.* 225.   *Rep. temp. Hardw.* 184. 189.   1 *H. Bl.* 250.

The body of the amended declaration here, speaks of " *the plaintiffs*," not of *the persons* mentioned or named in the recital. Besides, even the recital does not say that Maria Desportes was *sued* by the name of Maria Bonfils, but only mentions the circumstance of her " *being called*" so at the bringing of the suit, as it would insert an *alias* for her name.

The variance occurs in an amended declaration, filed after leave had to amend. The statute of Maryland of 1809, ch. 153. authorises any amendment to be made " *to bring the merits of a suit to issue.*" This amendment was justified by that act of the legislature; and the Court might have made the writ to conform to the alteration, as in England an original writ is made to suit the declaration. The writ, in Maryland, is sometimes altered from *debt* to *case*, to suit the narr. The husband, here, was joined to the wife only for conformity, and not by reason of a new interest, or as interested; since the suit, if no objection had been made before general issue, might have proceeded in the single name of the wife. One suing by guardian in the first instance, and afterwards becoming of age during the suit, may, and must, appear then by attorney. If the variance could have been, and had been, pleaded in abatement, the Court would, under the statute of Maryland, have allowed the declaration to be amended and cleared of the variance. This declaration may be assimilated to a declaration *by the bye*, by the husband and wife, though

1826.

Chirac
v.
Reinicker.

the writ is sued out in the single name of the husband.[a] Though a misnomer may be pleaded in abatement, even in England, the narr. and writ may be rectified in that particular upon terms. A party naming himself *generally* in a writ, may, nevertheless, declare in a *special* character.[b] The variance between the amended declaration and the first declaration, does not show that the former varies from the writ. The amended declaration is as good evidence of the contents of the writ as the original declaration is.

Mr. *D. B. Ogden* and Mr. *Webster*, for the defendant in error, (1.) stated, that it was necessary to advert to the specific question which was put as to the defendant's retaining counsel, and to the circumstances under which it was asked. The question involved the disclosure of the party's views, and of his instructions to his counsel, and of communications which were received by him in his capacity of counsel, and that would not have been made to him if he had not been so. It is not necessary that a suit should be pending to bind the counsel to secrecy for his client; any communication, after retainer of counsel, is within the rule against disclosure, if it relates to the suit, and is within the scope of the confidence given to the counsel.

2. No person can be made liable for the mesne profits after recovery in ejectment, who has not

a  *Chitty's Plead.* 252.
b  1 *Wils. Rep.* 141.   3 *Wils. Rep.* 61.   2 *Bl. Rep.* 722.

been a trespasser. The ejectment suit complains of a trespass, and the person to be charged for the mesne profits must, therefore, have been actually a party to that suit by having appeared as defendant, or by having been required to appear by service of process in the suit, and then failing to appear. It is only by this *judicial* notice, and a waiver of the privilege of appearing, testified by the *record of* the suit in ejectment, that the defendant in the action for mesne profits can be treated as if he had been a defendant in the ejectment, and adjudged a trespasser, to bear the liability for mesne profits. By mere waiver *in pais,* or notice extraneous to the record, a party cannot be rendered liable for mesne profits, although, in fact, he may have been interested in the result of the ejectment suit. That interest, however, *quoad* the ejectment, and in reference to tne suit for mesne profits, does not prove him to be a trespasser, which he must be before he can be liable to the claim.[a] The Court must look to the record of the ejectment for light as to the responsible parties on the score of mesne profits; they cannot derive it from other quarters, or collateral proof. Hence, too, the record of the ejectment is not evidence of the right of the lessors of the plaintiff to the mesne profits, as against one who was not actually a party in the ejectment suit, nor effectively so by being called on through notice in the process of ejectment to appear as defendant. Here, how-

1826.

Chirac
v.
Reinicker.

a 1 *Selwyn's N. P.* 121.

ever, another person than the defendant, Rei-nicker, was admitted in the ejectment suit to defend as the landlord of the property in question. He declared himself the landlord in claiming to defend as such; and the plaintiffs in ejectment, not denying his pretension in that respect, have acceded to his representation of himself, and must now be bound by it, and are estopped from saying that any other person was landlord. Reinicker, therefore, can in no wise be connected with the ejectment suit; and, at all events, the recovery there is not conclusive against him, that the lessors of the plaintiff are the proper claimants of the mesne profits. They must prove themselves the heirs entitled to the land, and to the mesne profits, as the result of that proof. The case from 3 *Campb. Rep.* 455. does not establish the plaintiffs' positions on these heads. The decision there was on another point; and the reasoning of it shows, that the party liable for the mesne profits must be a trespasser. The action for mesne profits will lie only where trespass *quare clausum fregit* would lie. According to that principle, Reinicker could not, by mere force of notice *in pais* of the suit, be held liable for the mesne profits.

3 The case as to the amended declaration is clear of all the learning respecting the mode of taking advantage of a variance between the declaration and the writ. The variance there meant, is not such a departure from the writ as in this case, as it effects an entire change of suit, and substitutes, in reality, a new suit, for

that which the writ and first declaration de-- **1826.**
fined.  There is no declaration here in the suit
which was originally brought; or, at least, that
which was a declaration has not been acted on;
but the issue is taken, and the jury sworn, be-
tween new parties, and out of the suit which the
record professes to carry on.  The Court may,
therefore, take notice of the change of parties,
and of claim, and of suit, in this case; since
they cannot fail to see between what parties they
are adjudicating; and it is not necessary that the
inconsistency be brought to their knowledge by a
plea in abatement exclusively.  It does not ap-
pear that Maria Bonfils was unmarried at the
time of bringing the suit.

Chirac
v.
Reinicker.

Mr. Justice STORY delivered the opinion of *Feb. 20th.*
the Court.

This is an action of trespass for mesne pro-
fits, brought by the plaintiffs in error against the
defendant in error, in the Circuit Court for the
District of Maryland.  The cause comes before
this Court upon exceptions taken by the plain-
tiffs on the trial of the cause in the Court below.

The plaintiffs had recovered judgment, and  First excep-
possession of the premises, in an ejectment, in  tion.
which J. C. F. Chirac prayed to be admitted as
landlord to defend the premises, and was admit-
ted accordingly under the common consent rule.
The record of the proceedings in that action
were offered by the plaintiffs as evidence in the
present suit; and they then offered to prove, by
the testimony of R. G. Harper, and W. Dorsey,

esquires, that the defendant had retained, and. paid them, to conduct the defence of the eject-ment for his benefit, and also propounded to these witnesses the following question : Were you retained, at any time, as attorney or counsel-lor, to conduct the ejectment suit above men-tioned, on the part of the defendant, for the be-nefit of the said George Reinicker, *as landlord of those premises.* This question was objected to as seeking an improper disclosure of profes-sional confidence. The Court sustained the ob-jection ; and this constitutes the first ground of exception.

Rule as to at-torney or coun-sel giving tes-timony re-specting facts communicated to them by their client, applied to this case.

The general rule is not disputed, that confi-dential communications between client and at-torney, are not to be revealed at any time. The privilege, indeed, is not that of the attorney, but of the client ; and it is indispensable for the pur-poses of private justice. Whatever facts, there-fore, are communicated by a client to counsel, solely on account of that relation, such counsel are not at liberty, even if they wish, to disclose ; and the law holds their testimony incompetent. The real dispute in this case is, whether the question did involve the disclosure of profession-al confidence. If the question had stopped at the inquiry whether the witnesses were employed by Reinicker, as counsel, to conduct the eject-ment suit, it would deserve consideration, whe-ther it could be universally affirmed, that it in-volved any breach of professional confidence. The fact is preliminary in its own nature, and establishes only the existence of the relation of

client and counsel, and, therefore, might not necessarily involve the disclosure of any communication arising from that relation after it was created. But the question goes farther. It asks, not only whether the witnesses were employed, but whether they were employed by Reinicker to conduct the ejectment for him, *as landlord of the premises.* We are all of opinion, that the question, in this form, does involve a disclosure of confidential communications. It seeks a disclosure of the title and claim set up by Reinicker to his counsel, for the purpose of conducting the defence of the suit. It cannot be pretended that counsel could be asked what were the communications made by Reinicker as to the nature, extent, or grounds of his title; and yet, in effect, the question, in the form in which it is put, necessarily involves such a disclosure. The Circuit Court was, therefore, right in their decision on this point.

Second exception.

The plaintiffs then gave in evidence certain deeds and patents, by which, and the admissions of counsel on both sides, the title to the premises in question was vested in John B. Chirac, deceased; and also gave in evidence, certain depositions to prove who were the heirs of J. B. Chirac, and also offered the record in the ejectment to prove Maria Bonfils to be one of the heirs; and then offered to prove, by *parol evidence,* that the defendant was, in fact, landlord of the premises at the commencement and during the progress of the ejectment, and had notice of the same, and employed counsel to de-

1826.

Chirac
v.
Reinicker.

fend the same ; and received the rents and profits thereof, during the progress of the ejectment; which evidence the Court refused to admit : and this constitutes the second exception of the plaintiffs.    The plaintiffs then offered to prove

Third exception.

the same facts, (not saying by parol evidence,) with the additional fact, that counsel did defend the same action for the benefit of the defendant. This evidence was also rejected by the Court, and constitutes the third exception of the plaintiffs.

Question involved in the 2d and 3d exceptions.

The question of law, involved in each of these exceptions, is substantially the same.    It is, whether a person, who was not a party to the ejectment, and did not take upon himself, upon the record, the defence thereof, but another did, as landlord, may yet be liable in an action for the mesne profits, upon its being proved that he was, in fact, the landlord, received the rents and profits, and resisted the recovery.

Recovery in ejectment conclusive against the tenant in possession, not against third persons not parties to the record.

It is undoubtedly true, that in general, a recovery in ejectment, like other judgments, binds only parties and privies.    It is conclusive evidence in an action for mesne profits against the tenant in possession, when he has been duly served with a notice in ejectment, whether he appears, and takes upon himself the defence, or suffers judgment to go by default against the casual ejector.    The reason is, that in the first case, he is the real party on the record; in the last, he is considered as substantially the defendant, and the judgment by default, as a confession of the title set up in the ejectment.    Such was the de-

cision of the Court in *Aislin* v. *Parkin*, in 1 *Burr.* 667. But in relation to third persons, the judgment in ejectment is not conclusive ; and if they are sued in an action for mesne profits, which is substantially an action against them as trespassers, they may controvert the plaintiff's title at large. In such a suit, the record of the ejectment is not evidence to establish the plaintiff's title ; but it seems admissible for another purpose, that is to say, to show the possession of the plaintiff. The plaintiff may certainly prove his possession connected with his title, by any sufficient evidence *in pais ;* and if his possession has been under a judgment of law, he is entitled to establish it by introducing the record of the recovery, and an executed writ of possession under it.

1826.

Chirac
v.
Reinicker.

But in an action for mesne profits against third persons, who are liable to the action, the record of the recovery in the ejectment, and an executed writ of possession under it, are evidence to prove the plaintiff's possession connected with his title.

The question then is, generally, whether it is competent for the plaintiff to maintain an action for mesne profits against any person who is in possession of the land by means of his tenants, and who, by his acts, commands, or co-operation, aids in the expulsion of the plaintiff, and in withholding possession from him. All persons who aid in, or command, or procure a trespass, are themselves deemed in law to be trespassers, whether they are actually present, or do the act through the instrumentality of their agents and servants. A recovery of the possession, in an ejectment against one of such agents, does not constitute a bar to an action for mesne profits against another agent, for the same reason, that

An action for mesne profits may be maintained against the landlord in fact, who is in possession of the land, by means of his tenants, and by his acts, commands, or co-operation, aids in withholding the possession from the plaintiff.

the former suit is no bar to the latter against the defendant in ejectment, viz. that the mesne pro- fits were not a matter in controversy in the eject- ment.    If, then, it is competent to maintain the action for mesne profits against any trespasser, although not a defendant in ejectment, it is com- petent to prove that the defendant is in that pre- dicament.   The evidence offered, in this case, was strong to prove the fact, that the defendant was a party to the trespass, supposing the plain- tiffs to have established their title and possession. If he was landlord of the premises, and the other parties were in possession under him ; if he was in the perception of the rents and pro- fits, if he resisted the plaintiff's title and posses- sion, and co-operated in the acts of the tenants for this purpose, the evidence was proper for the jury as proof of his being a cotrespasser.

This doctrine is supported by the case of *Hunter* v. *Britts*, (3 *Campb. N. P. Rep.* 455.) which was cited at the bar.   There, the judg- ment was against the casual ejector in the eject- ment suit, and the action for the mesne profits was brought against Britts as landlord ; and he was proved to be in the receipt of the rents and profits from the time of the demise till the writ of possession was executed.   The ejectment was served upon the tenant ; there was no evi- dence that Britts had any notice of this till after judgment ; but, subsequently, he promised to pay the rent, and the costs, to the plaintiff.   It was objected, that the judgment in ejectment was not, under these circumstances, evidence of

title against Britts ; and Lord Ellenborough held, that it was not, without notice of the ejectment. But he thought that his subsequent promise amounted to an admission that the plaintiff was entitled to the possession of the premises, and that he himself was a trespasser.   The language of the learned Judge seems, indeed, to import, that if the landlord had had notice of the ejectment, he would have been concluded by the recovery in the ejectment.   It might be so, if the common notice had been formally given to him as tenant in possession, and he had neglected to take upon himself the defence of the suit.   If, however, the notice was *in pais*, and conduced merely to prove his actual knowledge of the suit, without calling upon him to defend it, we are not prepared to admit, that, on general principles, it ought to have such an effect.[a]   But the point actually decided was, that a party might be charged, in an action for mesne profits, who was not, in any sense, a party to the ejectment, by establishing the title against him, and showing his connexion as landlord with the tenant in possession, and his adoption of the acts of the latter.

But, it is said, that assuming the law to be so in general, yet, in the present case, the plaintiffs are estopped from setting up the fact that the defendant was the real landlord, because, in the ejectment, one J. C. F. Chirac prayed leave of the Court, " as landlord of the premises, to be made defendant" in the place of the casual ejector, which was, with the *consent* of the lessee of

a *Adams on Ejectment,* p. 336. 2d ed.

*[margin note:]* 1826.

Chirac
v.
Reinicker.

*[margin note:]* Plaintiffs not estopped by the record in the ejectment suit from setting up the fact that the defendant was the real landlord.

the plaintiffs, allowed by the Court.   It does not appear to us, tl at any such estoppel arises from this allegation in the record.  The record itself certainly does not constitute a technical estoppel, for it is *res inter alios acta.*   The most that can be said is, that it is proper evidence to prove who the plaintiffs at that time deemed to be landlord, and, therefore, admissi le to rebut the presumption that the present defendant was the landlord. But, certainly, the evidence was not conclusive upon either party.   It was open to the plaintiffs to show, that, in point of fact, the present defendant was the real landlord, that the admission in the record was founded in mistake of the facts, or that J. C. F. Chirac was a sub-landlord under Reinicker, or his superior landlord.  What would have been the effect of such proof is not for this Court to determine.  We think, then, that the evidence offered by the plaintiffs was admissible upon general principles ; and we see no estoppel which excludes it in this particular case.   The directions of the Circuit. Court were, on this point, erroneous.

If it had appeared upon the record, that the evidence offered by the plaintiffs was solely to connect the defendant with the ejectment, so that the recovery would be conclusive upon him in the same manner as if he had been a party on the record, and, as such, admitted to defend, and actually defending the suit, the case might have required a very different consideration.  We have already intimated an opinion, that notice of an ejectment suit, or defence of the suit, by a

person not tenant in possession, or defendant on record, does not make him a party to the suit in contemplation of law, so as to conclude his rights.

In considering the fourth and fifth exceptions, it is necessary to advert to the fact, that the plaintiffs in this action originally were Anthony Taurin Chirac, Mathew Chapus and Anna Maria his wife, Mathew Thevenon and Maria his wife, and Maria Bonfils, the same persons having been plaintiffs in the ejectment. During the pendency of the suit the plaintiffs obtained leave to amend their declaration, and did amend it, by introducing the name of John B. E. Bitarde Desportes, as husband of the said Maria, called, at the commencement of this suit, Maria Bonfils. To this amendment no objection was taken, and the defendant pleaded to the declaration, so amended, the general issue. The evidence of title of John B. Chirac, deceased, being introduced, and, also, evidence to prove that Anthony T. Chirac and the female plaintiffs were heirs at law of John B. Chirac, the defendant then prayed the Court to direct the jury, " that they ought to find a verdict for the defendant, unless they are satisfied that *all* the plaintiffs are the *proper heirs* at law of the aforesaid John B. Chirac," which direction the Court accordingly gave. The probable intention of the defendant was to pray an instruction to the jury, that unless all those of the plaintiffs who claimed to be heirs of John B. Chirac, should establish their title, the suit could not be maintained. In this view, the opinion of

the Court would be correct, for it is a general rule that no recovery can be had unless all the plaintiffs are competent to maintain the suit. If, therefore, the title fails as to one, it is not maintainable in favour of the others. The proof does not, under such circumstances, meet the case set up in the declaration. But, framed as this exception actually is, the direction given by the Court is, in its terms, erroneous. It was not necessary to prove that *all* the plaintiffs are the *proper* heirs at law of J. B. Chirac. The action was maintainable if the husbands were not the proper heirs of J. B. Chirac; for, in right of their wives, they were proper parties to the suit. The fourth exception is, therefore, well taken.

The fifth exception is founded on the supposed variance between the writ and declaration, by the amendment, introducing the husband of Maria Bonfils upon the record. The Court held this variance fatal under the general issue. It is observable, that this amendment was made under an order of the Court, and was not objected to, on the record, by the defendant; and that the general issue was subsequently pleaded. It has been decided, in this Court, that the allowance or disallowance of amendments is not matter, for which a writ of error lies here. Variances between the writ and declaration, are, in general, matters proper for pleas in abatement; and if, in any case, a variance between the writ and declaration can be taken advantage of by the defendant in the Court below, it seems to be an established rule, that it cannot be done except

*Fifth exception.*

*The granting amendments is not matter for a writ of error to this Court.*

*Variances between the writ and declaration, how to be taken advantage of.*

upon oyer of the original writ, granted in some proper stage of the cause. The existence of such variance forms no matter of controversy upon the general issue, by which the jury are to be governed in forming their verdict. In the present case, as no objection was taken to the amendment upon the record, it must be deemed to have been waived by the defendant, and therefore, not proper to be insisted upon at the trial.[a] It does not appear, on the record, whether Maria Bonfils was married before or pending the suit ; and the fact might have a material bearing upon the propriety of granting the amendment, since, at all events, if pending the suit, it would not of itself abate the suit ; and the objection could only be made available by a plea in abatement.[b]

*1826.*

*Chirac*
*v.*
*Reinicker.*

Marriage of one of the plaintiffs pending the suit, does not, of itself, abate the suit.

Upon the whole, it is the opinion of the Court, that there is error in the directions of the Circuit Court in the four last exceptions, and contained in the record, and for this cause the judgment must be reversed, and a *venire facias de novo awarded.*

a See *Com. Dig. Abatement* G. 8. *Com. Dig. Pleader*, C. 13. 2 *Wils. Rep.* 85. 394, 395. 1 *Chitt. Pl.* 438, 439. *Stephens on Plead.* 68. 423. 1 *Saund. Rep.* 318. note 2. by Williams.

b *Com. Dig. Abatement*, H. 42.