# MORRIS *v.* WHEAT.

PLEADING AND PRACTICE; AMENDMENT; EJECTMENT; COMMON SOURCE OF TITLE; LANDLORD AND TENANT; ADVERSE POSSESSION; TENANTS IN COMMON.

1. The striking out of the name of one of several plaintiffs in ejectment is an amendment within the meaning of R. S. U. S., Sec. 954, and being within the discretion of the trial court is not appealable.

2. Where in ejectment all parties claim under a common source of title, the defendant is estopped to deny the validity of that title.

3. During the existence of the tenancy, neither a lessee nor his assigns can dispute the title of the lessor or his heirs, either by setting up title in themselves or in a third person.

4. In order to convert a tenancy into adverse possession there must be a clear, positive and continued disclaimer and disavowal by the tenant of his landlord's title, and assertion of an adverse right, brought home to the landlord.

5. One tenant in common may oust his co-tenants and claim title to the whole adversely, but notice of his adverse claim must be brought home to his co-tenants in order to bind them.

6. The amendment of a declaration in ejectment by striking out the name of one of the several original plaintiffs, where the amendment asserts the same title and same recovery, is not equivalent to the commencement of a new suit, so as to restrict the recovery of *mesne* profits for a period of three years before the filing of the amended declaration.

No. 651. Submitted May 6, 1897. Decided June 7, 1897.

HEARING on an appeal by the defendant from a judgment on verdict in an action of ejectment. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Frank W. Hackett* for the appellant:

1. The court had no power to allow the plaintiffs to strike out the name of Sophia A. Parker, plaintiff.

Striking out a party plaintiff in an action of trespass was unknown to the common law. 1 Encyclopedia of Pleading and Practice, 543; *Pickett* v. *King*, 4 N. H. 212.

The power must be conferred by statute, or it does not exist. *Thanhauser* v. *Savins*, 44 Md. 414. No statute in force in this District has given the court such power. *Stoddert* v. *Newman*, 7 H. & J. 251.

It is not granted by Section 32 of the Judiciary Act. Rev. St., Sec. 954. That section does not warrant a striking out of the name of a party. Its aid does not extend beyond the curing of defects in pleading. *Comegys* v. *Robb*, 2 Cr. C. C. 141; *Moores* v. *Carter*, Hemp. 64.

In *Tobey* v. *Claflin*, 3 Sumn. 379, Mr. Justice Story before trial allowed the plaintiff to strike out the name of a defendant, on the ground that, if the case went to trial, the plaintiff could enter a *nolle prosequi* against one defendant, under the authority of the reasoning in *Minor* v. *Bank*, 1 Pet. 46.

Had the act authorizing amendments sanctioned this procedure, Mr. Justice Story would have rested his decision upon that act.

Under the New York code, power given by statute to referees to amend pleadings, "as the court upon such trial, upon the same terms, and with the like effect," does not extend to striking out the name of a party to the suit. *Billings* v. *Baker*, 6 Abb. Pr. 213.

2. The defendant is not estopped to show that plaintiffs, the heirs of George O. Dixon, do not have the legal title.

The learned judge fell into error in assuming the proof to be that Parker held a continuous possession from the death of George O. Dixon. It was a question of fact for the jury to determine. Where the mere existence of a tenancy is proved, the law presumes it to be from year to year. Best on Evidence, Ed. 1893, p. 361.

Estoppel, as between landlord and tenant, rests upon what is conceived to have been the intention of the parties to the contract of lease. A tenant does not have an active duty to perform by way of delivery of possession. On the death of the landlord during the term, the tenant is not to ascertain what has become of the estate, and at his peril select the person, whether devisee or heir, to whom he must deliver possession. His duty is discharged by removing his chattels and leaving the land unobstructed for the owner to enter. The extent of Parker's engagement was to quit the premises; and this act it is fair to assume he duly performed.

John A. Dixon supposed that the property belonged to his children, so that it is not easy to contemplate him as having entered the premises in the capacity of an heir. But it must be kept in mind that the possession of Parker as tenant is ended by his going out, so that the legal owner, whoever he is, may enter, if he chooses.

Plaintiffs fail to prove that the tenant remained in possession until August 1, 1864. Notwithstanding that John A. Dixon thought the premises had been given to his chil-

dren, the law will sustain a presumption that he, being in fact one of the heirs, did actually enter as an heir, so far as such presumption may be needful to support the contention that Parker did his duty.

3. The court should have granted defendant's motion for directing the jury to find for the defendant, for the reason that the plaintiffs had failed to prove a legal title. Plaintiffs failed to prove a legal title to the premises, the deed of Morgan and Cox, trustees, on its face disclosing a conveyance, not to the purchaser at the sale, but to a person named by said purchaser as having bought the property of the purchaser at a date previous to the date of the ratification of the sale. Dixon had obtained an equitable title only by virtue of such conveyance from the trustees. What the court ratified was a sale to Nally. The trustees never informed the court that Nally had sold the property three months before he applied, through them, for ratification of his purchase. Nor did the trustees ever report to the court that they had executed a conveyance to Dixon. They clearly exceeded their authority. They could convey to Nally only. The attempted conveyance to Dixon was a departure from the order of the court, and ineffectual to pass the legal title. See *Den* v. *Lambert*, 13 N. J. Law, 182.

If a deed to the purchaser is not in fact made by the trustee as directed by the decree, the effect of sale and payment of purchase money is to give the purchaser the equitable and not the legal title. *Sanders* v. *McDonald*, 63 Md. 503. The conveyance passed nothing beyond an equitable title, which does not support ejectment. *Smith* v. *McCann*, 21 How. 398.

4. The decree of sale, by virtue of which the deed to Dixon purports to have been made, was a void decree. The court had no jurisdiction to order a sale of real estate of which a nonresident infant was part owner. Even had a statute conferred power on the court to sell, no proper means were taken to bring the infant before the court; no guardian

*ad litem* was appointed to represent the infant, and the order purporting to be a decree *pro confesso* against an infant for nonappearance upon an order of publication, was void.

Chancery originally had no power to decree a sale under partition proceedings, unless all parties consented. 2 Leading Cases in Equity, Ed. 1877, p. 915. In many States this power has been conferred by statute. It seems to have been given in 1831 by the legislature of Maryland. *Mewshaw* v. *Mewshaw*, 2 Md. Ch. 13. Our courts under the Maryland statutes could order only partition, not a sale, until 1876 (19 Stat. 202). See *Willard* v. *Willard*, 145 U. S. 116.

Two statutes provide for the sale of land held by an infant jointly with others, that of 1785, Ch. 72, Sec. 12 ; and 1786, Ch. 45, Sec. 8. The former requires the appearance of the infant before the chancellor, who is to examine all the circumstances, the infant being present, so that the chancellor may satisfy himself that the proposed sale is for the interest and advantage, both of the infant and of the other persons concerned. The legislature did not have in view infants living outside of the State.

The statute of 1786 permits a sale only after it appears that certain specified means of effecting a division of the land are not practicable. Later the legislature passed the act of 1797, Ch. 114, the 7th section of which provides that on a bill filed by a person holding land jointly or in common with an infant residing out of the State for the purpose of obtaining partition of land . . . the chancellor may direct a commission to issue writs to three persons . . . to go to the infant, etc." 2 Kilty, *in loco*; Abert, p. 101, Sec. 86.

The circuit court in 1828 refused to ratify a sale where a widow and adult heirs petitioned against minor heirs residing out of the jurisdiction. The court said it was doubtful if the court of chancery had jurisdiction to confirm a sale where the land was owned in part by nonresident infants. *Hastings* v. *Granberry*, 3 Cr. C. C. 332.

The legislature never meant that an infant's land should be taken from him and converted into money, except the infant were before the court, actually or constructively. The only constructive means of reaching him is not by advertisement in a District newspaper, but by sending to the infant, and appointing a guardian to take his answer. The authority of chancery to sell land of adults jointly owned did not exist at that time. As the sale of land in which an infant is interested as part owner, is wholly a creation of statute, the power to act is jurisdictional. The infant must be brought within the jurisdiction in the manner pointed out by statute, or the court does not acquire the right to proceed.

An order of publication was obtained evidently in compliance with section 1, act of 1795, Chap. 88. But this process was equally available when the statute of 1797 was passed, which pronounced it doubtful whether there was any method of proceeding where the infant resided out of the State. It is apparent that the legislature intended that this general act of publication should not be applied to nonresident infants.

The decision in *Bryan* v. *Kennett,* 113 U. S. 96 (1884), that the statute of Missouri authorizing publication included nonresident infants, is put on the ground that there was no exception in favor of nonresident infants from the provision for bringing nonresident defendants before the court. In Maryland, however, the act of 1797 plainly recognizes the exceptional position of this class of defendants.

To show want of jurisdiction in the court that granted the order of sale, is not to make a collateral attack. *Williamson* v. *Berry,* 8 How. 542.

The infant must be before the court. A court of chancery has jurisdiction over every infant residing within its territorial limits; and there are authorities that sustain the orders of such a court in disposing of real estate, even when the infant is not served. But these are cases where the subject-matter and the person both exist within the jurisdiction.

Much will be presumed in favor of the validity of the proceedings of a court of general equity powers in dealing with real estate, where once it appears that it has jurisdiction over the subject-matter. *Sloane* v. *Martin*, 77 How. 249.

Where the infant is a nonresident, as in *Wheeler* v. *Garner*, the court does not get jurisdiction, unless a statute has conferred it. See language of Mr. Justice Field in *Galvin* v. *Page*, 18 Wall. 371.

5. Defendant had a right to argue to the jury the facts constituting adverse possession. The question of the character of the possession is to be submitted to the jury. *Gross* v. *Welwood*, 90 N. Y. 638; 18 How. 50; 5 Pet. 438.

Even if Parker had continued as a tenant without intermission down to August 1, 1864, and had taken the new lease while already in possession, his attorning to the children of John A. Dixon would have been notice to Mrs. Baker and Mrs. Wheat that he was henceforth holding adversely to them. *Willison* v. *Watkins*, 3 Pet. 43.

6. Defendant has a good title by adverse possession. Defendant traces title through H. A. Parker to the children of John A. Dixon. The latter are to be considered as holding adversely to the heirs, at least from August 1, 1864, though they must have asserted ownership as early as August, 1862.

By filing their amended declaration the plaintiffs began a new and different suit. The original declaration was that of three plaintiffs seeking to recover possession of a lot from a stranger as an entirety. Now, two plaintiffs seek to recover two undivided third parts of the same lot, presumably, as two tenants in common against a third. *White* v. *Moss*, 92 Ga. 244.

If a party, under the old form of action, amended his declaration by inserting a new count laying a demise from a different lessor, the statute of limitations was held to run until the date of the amendment. *Sicard's Lessee* v. *Davis*, 6 Pet. 124.

A change of parties plaintiff creates a new suit, even though the remaining plaintiffs are of those who had sued earlier. The trespass complained of in ejectment is a single act. An allegation that defendant entered and ejected W and B is not identical with an allegation that defendant, on the same day, ejected W, B and P. The identity of a joint action is destroyed by changing the parties.

The tenancy of Parker to the heirs was created not by an agreeement to which they had been parties, for neither party knew, as matter of fact, that the relation had an existence between them. The law constituted three persons landlords, in lieu of the single individual of whom the tenant had hired. Should an owner die leaving unknown heirs, it would be impossible for a tenant for a term of years to disclaim, and acquire title by adverse possession, if the rule were that actual notice of his intention must be imparted. Like efficacy is given to constructive notice as if the party to be charged had been made aware of what was taking place. The neglect of Mrs. Wheat and Mrs. Baker to look after their property affords reasonable ground for charging them with constructive notice that the tenant had attorned to a hostile party.

Open and notorious control by the children, coupled with the attornment we assume Parker to have made, was sufficient notice to Mrs. Wheat and Mrs. Baker to create adverse possession in the children, and a similar adverse holding in their behalf by the tenant. *Willison* v. *Watkins*, 3 Pet. 43.

Neither Mrs. Wheat nor Mrs. Baker was seized of the lots, not having entered. When descent was cast, the promises were possessed by a tenant. Whether Parker's possession is such seizin in law as to make their respective husbands tenants by the curtesy, is hardly worth arguing, for the reason that the weight of authority in the United States is to the effect that adverse possession begun in the lifetime of the wife, when the husband has the right of

curtesy initiate, runs against both husband and wife, and bars after twenty years the title of both, as well as that of her heirs, except for the saving of disability of married women, etc. Washburn on Real Property, 4th Ed. 180–181, and cases cited.

The right to sue had expired before the first suit was instituted, October 9th, 1888. Taking August 1st, 1864, as the date when adverse possession was begun, the letting of the premises was an open and notorious act, which the heirs were bound to notice. Mrs. Wheat and Mrs. Baker were under no disability. On the 10th of April, 1869, the Married Woman's Act of this District went into effect (Abert, p. 275), which removed any previous disability.

The Supreme Court of Illinois, construing the Married Woman's Act of that State, holds that it removes the protection of disability. *Castner* v. *Walrod*, 83 Ill. 178. Compare *Kibbe* v. *Ditto*, 93 U. S. 674. The Illinois act is nearly identical with our own.

By section 2, of chapter 16, act 21 James I, a *feme covert* whose disability is removed has ten years within which to bring her action. If twenty years have elapsed since the right of action first accrued, and ten of those years have been free from disability, the right of entry is barred. Angell on Limitations, Ed. 1876, pp. 493–494. Twenty years adverse possession bars the right of entry of a woman who was *feme covert* at its inception if the disability was removed ten years before the term of twenty years expired. *Willson* v. *Betts*, 4 Denio, 201. In August, 1884, therefore, the right of Mrs. Wheat's heirs to bring their action had ceased.

7. The 16th assignment of error raises the question for how long a period can plaintiffs recover damages as mesne profits where the statute of limitations is not pleaded. We asked the court to instruct the jury that such damages can be recovered for three years only before the bringing of the suit. We assign its refusal as error.

By a rule of court a plaintiff may unite under separate

counts an action of ejectment and an action for mesne profits. (Rule 10). When thus united the several counts form but one action, and that an action of trespass.

The plea of "not guilty" lets in a broad line of defences, that need not be pleaded specially, such as adverse possession for twenty years, coverture, infancy, and the like. Courts do not favor special pleas in ejectment. *Barbour* v. *Moore*, 4 App. D. C. 535.

By analogy, the same plea ought to protect a defendant from the incidents of the plaintiff's regaining possession as effectually as it does from the main features of the claim for title. Until title is established, no damages by way of mesne profits can be recovered. Defendant in this anomalous suit ought not to be required to set up the special plea of limitation to the trespass *quare clausum fregit* upon which damages are claimed, any more than to that upon which title is claimed, since it is the same trespass. Of course, when a plaintiff subsequent to recovering possession brings his separate action for damages the defendant, to avail himself of the statute, should plead it. We are not aware that the precise point here presented has been decided.

It is proper to add that the learned judge overruled our prayer apparently on the ground that the suit was begun in 1888, thus allowing damages for eight years to 1896. But as we say that the suit was begun November 23, 1896, our prayer should have been granted, unless this court shall say that defendant ought to have filed her special plea of the statute.

*Mr. H. O. Claughton* for the appellees:

1. The permission to the plaintiffs to amend the declaration by striking out the coplaintiff Parker was not error. The statute authorizes the trial court to allow amendments to cure any defect in process or pleading. Sec. 954, R. S. U. S. The Supreme Court of the United States has held that under that statute the trial court may allow an amendment as

radical as the striking out of one sole plaintiff and substituting another and changing the form of action from assumpsit to trover. *Chapman* v. *Barney,* 129 U. S. 677; *Bamburger* v. *Terry,* 103 U. S. 40. The granting permission to amend is discretionary with the trial court and is not subject to review. *Manderville* v. *Wilson,* 5 Cranch, 15; *Shehy* v. *Manderville,* 6 Cranch, 253; *Wright* v. *Hollingsworth,* 1 Peters, 165; *United States* v. *Buford,* 3 Peters, 12; *Ex Parte Bradstreet,* 7 Peters, 624. Such amendments are allowed in Maryland and other States. *Kerwan* v. *Latour,* 1 Har. & J. 296; *Insurance Co.* v. *McGowan,* 16 Md. 47; *Glynn* v. *Locomotive Works,* 5 Allen, 317. The amendment can not be made in the appellate court. *Megher* v. *Stuart,* 6 Mo. App. 498. Amendment by striking out a plaintiff was always allowed in actions of ejectment. *Chadbune* v. *Radcliff,* 30 Me. 354; Tyler on Ejectment, 399–401. Also amendment by adding new plaintiff. *Rehoboth* v. *Hunt,* 1 Pick. 224; *Jackson* v. *Stiles,* 5 Conn. 418; *Thayer* v. *Holly,* 3 Met. 369; *Smith* v. *Vaughan,* 10 Peters, 366; *Johnson* v. *Huntington,* 13 Conn. 47; *Wilson* v. *King,* 6 Yerg. 493; *Stevens* v. *Fitch,* 2 Met. 505; *Minor* v. *Bank,* 1 Peters, 46.

2. The court did not err in refusing to grant the plaintiff's prayer as to the effect of the chancery proceedings in the case of *Wheeler* v. *McGowan et al.* Both parties claimed under the deed to George O. Dixon. That deed was the common source of title. *Anderson* v. *Reid,* 10 App. D. C. 426.

3. There was no error in the rulings of the court upon the question as to the defendants having attorned to the personal representative of George O. Dixon, or to the guardian of the supposed devisees of George O. Dixon. Even if there had been any evidence of such attornment, it would have been quite immaterial. On the other hand, if the contention is that such attornment was a disclaimer of the lessor's title and a declaration that the lessee held by adverse possession, in that case the bar would not begin to run until notice of the disclaimer and adverse holding had been

given to the lessor or his heirs at law. *Floyd* v. *Mintsey*, 7
Rich. R. 181; Tyler on Ejectment, p. 877; *McClung* v. *Ross*,
5 Wheat. 116. There is no evidence in the record of any
such notice. There is no authority more decided upon the
point than the decisions of the Supreme Court. *Bradstreet*
v. *Huntington*, 5 Peters, 401, 439, and 2 Peters, 485; *Willison*
v. *Watkins*, 3 Peters, 43; *Barr* v. *Gratz*, 4 Wheat. 213.

There is no pretence that the plaintiff ever had actual
notice. It is intimated that, inasmuch as John A. Dixon
was cotenant with the plaintiff, that notice to him was notice
to them. But the sole possession of John A. Dixon would
not have been an ouster of his cotenants until he had given
them·actual notice of his claim to hold adversely to them.
How, then, could his deed to Parker, of which they had no
notice, make Parker's holding adverse? *Floyd* v. *Mintsey*,
*supra*; *Kirk* v. *Smith*, 9 Wheat. 241–288.

Even if Jane Baker and Emily Wheat had had actual
notice they were, and continued to be, under the disabilities
hereinbefore set forth. Mrs. Wheat was under disability as
long as she lived. Her husband was tenant by the curtesy
until his death, which occurred in 1879. The statute did
not begin to run against the plaintiff Wheat until that time,
and had not begun to run against Jane E. Baker when this
suit was brought. There can be no adverse possession
against a reversioner. Tyler on Ejectment, pp. 881–923–
928–946; *Clarke* v. *Hughes*, 13 Barb., p. 147; Washb. on
Real Property, 132–133; *Jackson* v. *Johnson*, 5 Cow. 74;
*Jackson* v. *Schoonmaker*, 4 Johns., p. 390; *Austin* v. *Stevens*,
24 Me. 526.

4. The defendant either made defence on her paper title,
or on the ground of adverse possession. If she relied on
the former, claiming from a common source of title, she was
estopped from disputing the legal title of George O. Dixon.
If she relied upon adverse possession she is estopped because
she went into possession under the title of Dixon, and never
surrendered that possession. Bigelow on Estoppel, p. 450, *et seq.*

Mr. Justice SHEPARD delivered the opinion of the Court:

1. This is the second appeal that has been prosecuted by the defendant, Louisa Morris, in an action of ejectment from an adverse judgment therein.

The suit was brought by three plaintiffs, the appellees, Milton M. Wheat and Jane E. Baker, and one George S. Parker, each claiming an undivided interest of one-third in the premises, and resulted on the first trial in a judgment in their favor. In obedience to the established practice in ejectment, that, " if one of several plaintiffs have no title, the coplaintiffs cannot recover," that judgment was reversed because of the want of title in said plaintiff, George S. Parker. He was held to be estopped by the recitals of a former deed, under which defendant claimed, from his grantor, John A. Dixon. *Morris* v. *Wheat*, 8 App. D. C. 379.

After the cases had been remanded for new trial, the court, on application of the plaintiffs, granted leave to amend by striking out the name of said Parker and changing the declaration so as to continue the suit in the name of said Wheat and Baker for the recovery of two-thirds of the premises. The defendant objected to the action of the court and reserved an exception which is the foundation of the first assignment of error.

2. If the striking out of the name of one of the plaintiffs in an action of ejectment is an amendment within the contemplation of the statute (R. S., Sec. 954), there is an end of the question; for it is well settled that the granting of leave to amend is a matter of discretion in the trial courts, the exercise of which is not subject of review on appeal. *Wright* v. *Hollingsworth*, 1 Pet. 165, 168 ; *Chapman* v. *Barney*, 129 U. S. 677, 681. The contention of appellant, that it is not an amendment within the purview of that section of the judiciary act, is founded on a strict and narrow construction in which we cannot concur.

In view of the mischief for which the act provided a

simple and much needed remedy, its interpretation ought to be as broad and liberal as its terms will reasonably permit. "In the administration of justice, matter of form not absolutely subjected to authority may well yield to the substantial purposes of justice." *Minor* v. *Mechanics' Bank*, 1 Pet. 46, 80.

Although the particular point as here raised has never been passed upon by the Supreme Court of the United States, we think it comes clearly within the rule of many of its decisions, a few of which only will be cited. In actions of ejectment amendments have been permitted, adding a new count alleging a demise by a lessor not named in the old counts (*Wright* v. *Hollingsworth*, 1 Pet. 165); extending the term (*Walden* v. *Craig*, 9 Wheat. 576); and introducing a new plaintiff in the person of a husband of one of the plaintiffs (*Chirac* v. *Reinicker*, 11 Wheat. 280, 302). In *Chapman* v. *Barney*, 129 U. S. 677, which was an action of assumpsit, the substitution of the sole plaintiff by another was declared an amendment within the discretion of the trial court.

3. The next point raised by the appellant is in respect of an alleged defect in the title of George O. Dixon, under whom plaintiffs claim by inheritance; but before its consideration, we must determine whether she was not estopped to impeach the validity of that title. The title of George O. Dixon was by conveyance from certain trustees appointed in a proceeding in equity to sell and convey certain lands, including the premises in controversy, about June 12, 1862. The title was attacked for want of jurisdiction in the court over the person of a nonresident infant. In the view that we have taken of the question of the estoppel, it is not necessary to set out the proceedings in court preliminary to the conveyance. For the purposes of the argument the contention of the appellant may be conceded to be sound.

It is admitted in the record that George O. Dixon paid the purchase money, received the deed, and entered into

possession. He subsequently delivered the possession to William H. Parker under a lease for a term not stated. George O. Dixon died shortly afterwards. On August 4, 1864, one James F. Holliday, reciting himself "agent and attorney of John A. Dixon, of Alexandria, Virginia, administrator of George O. Dixon, deceased," renewed the lease to William H. Parker for ten years, who agreed to pay rent at the rate of $60 per annum, and to pay all taxes and charges against the property. A right of renewal for ten years more was given to said Parker, as well as an option to purchase. This instrument was executed by both Parker and Holliday in the presence of subscribing witnesses. George O. Dixon died in Alexandria, Virginia, in 1862, leaving a will making John A. Dixon executor, and after devising certain parts of his estate, leaving the residue to the infant children of John A. Dixon. George O. Dixon really died intestate as to the premises in controversy, because his will was not attested in the manner required by the law of the District of Columbia. He left three heirs-at-law, namely, his brother, John A. Dixon, a sister (the plaintiff, Mrs. Baker), and another sister, the mother of the plaintiff Wheat.

The sisters appear not to have been aware of the ownership of the land by George O. Dixon, much less their inherited rights therein. John A. Dixon and William H. Parker at that time seem to have regarded the title as being in the infant children of said John A. Dixon under the will aforesaid. Parker remained in possession under his lease, but to whom he paid rent does not appear.

In March, 1869, Louisa Morris and her husband, Patrick, who afterwards died, entered into possession under a contract of purchase from said William H. Parker, the terms of which do not appear. On May 11, 1871, John A. Dixon made a conveyance of the premises to Henry A. Parker, a son of William H. Parker, and at the latter's request. This deed recited that the title was in the infant children of the grantor, and that he was their guardian. No authority of

any court was pretended for this conveyance. On the same day William H. Parker conveyed to Henry A. Parker, and assigned to him the said lease, which by its terms continued until August 1, 1874, subject to renewal. The character of the conveyance from William H. Parker to Henry A. Parker is not given in the bill of exceptions.

The bill of exceptions also states that a conveyance was made by Henry A. Parker to Patrick and Louisa Morris; but the instrument does not appear, and its terms and date are unknown.

It further appears that on March 10, 1886, the infant children of John A. Dixon, having become of age, made a deed upon a consideration of $10 to Henry A. Parker; and it was on the same day that said John A. Dixon, as one of the heirs of George O. Dixon, made the conveyance to George S. Parker, which was held inoperative on the former appeal. Although the transactions between William H. Parker and Henry A. Parker and Patrick and Louisa Morris are left in much obscurity by the bill of exceptions, we think it is perfectly clear that whatever title the appellant has had or claimed is under George O. Dixon, who is the common source for all the parties. Under a familiar principle, she cannot now be heard to deny that he had a valid title. *Anderson* v. *Reid,* 10 App. D. C. 426, and cases therein cited.

4. The next question is whether the court erred in refusing to submit to the jury the evidence offered by defendant in support of her claim of adverse possession. Defendant claimed adverse possession from March, 1869, though it appears that her entry was then under an executory contract of some kind with William H. Parker; and it seems that her conveyance from Henry A. Parker, the character and date of which do not appear in the record, could not have been made until on or after May 10, 1871, which is the date of William H. Parker's conveyance to him. Several interesting questions have been presented and argued touch-

ing the disabilities of coverture under which the two sisters
of George O. Dixon labored at the time of his decease.   These
we do not consider it necessary to decide.   For, assuming
that the possession commenced in 1869, and that there was
nothing to prevent the running of the statute, if it then
began, we are of opinion that there was no error in refusing
defendant's prayer for instruction.   Notwithstanding the
recitals of the lease contract made by Holliday, "agent and
attorney," with William H. Parker, the same inured to the
benefit of the heirs-at-law of George O. Dixon, deceased, as a
renewal or continuation of the former tenancy and posses-
sion thereunder; at the least, there is nothing to warrant
its being regarded as a repudiation of that lease.

This lease, which still had several years to run at the
time of the appellant's acquirement of an interest in the
premises, contained a covenant for renewal and for purchase
at the option of the tenant, William H. Parker, and there
is nothing in the evidence concerning his contracts for con-
veyance with Louisa Morris and his son, Henry A. Parker,
that is inconsistent with his or their continued recognition of
the title of George O. Dixon or his heirs.   The assignment
of the lease to Henry A. Parker at the time of the convey-
ance to him is an unequivocal act of recognition by both.
The attempted conveyance by John A. Dixon, as guardian,
to Henry A. Parker, was made on the same day, and ap-
pears to have been a part of the transaction between the
Parkers, father and son; and both were made more than
two years after the executory contract between William H.
Parker and Louisa Morris under which her possession
began.   Holding under the lease from George O. Dixon,
William H. Parker nor his assigns could dispute the title of
his lessor or his heirs, either by setting up title in themselves
or in a third person during the existence of the tenancy.
*Willison* v. *Watkins*, 3 Pet. 36, 47, 51; *Barr* v. *Gratz*, 4 Wheat.
213, 222; *Woodward* v. *Brown*, 13 Pet. 1, 4.

The tenant may, however, without actual surrender to

his landlord, remain in possession, assert title in himself, and lay a foundation for the completion of a title by adverse possession, for a sufficient period.

But whilst this right exists, it is subject to certain plain and essential conditions. As was said by Mr. Justice Nelson: "The trustee may disavow and disclaim his trust; the tenant, the title of his landlord after the expiration of his lease; the vendee, the title of his vendor after breach of contract; and the tenant in common the title of his cotenant; and drive the respective owners and claimants to their action within the period of the statute of limitations. The only distinction between this class of cases and those in which no privity between the parties existed when the possession commenced is in the degree of proof required to establish the adverse character of the possession. As that was originally taken and held in subserviency to the title of the real owner, a clear, positive and continued disclaimer and disavowal of the title, and assertion of an adverse right, and to be brought home to the party, are indispensable before any foundation can be laid for the operation of the statute. Otherwise the grossest injustice might be practiced; for, without such notice, he might well rely upon the fiduciary relations under which the possession was originally taken and held, and upon the subordinate character of the possession as the the legal result of those relations." *Zeller's Lessee* v. *Eckert*, 4 How. 289, 295.

It is very clear that no actual notice of an adverse claim or possession was given to the heirs of George O. Dixon, represented in this suit. As we have before said, there was nothing in the evidence of the transaction of William H. Parker and his assigns necessarily inconsistent with the relation of tenant. There is no evidence whatever of such acts of open, adverse claim of title and possession as might be sufficient in law to put the heirs upon notice. *Ricard* v· *Williams*, 7 Wheat. 59, 106, *et seq.*; *Bradstreet* v. *Huntington*, 5 Pet. 402, 445; *Speidel* v. *Henrici*, 120 U. S. 377, 386.

Nor is there anything to strengthen the defendant's case in the situation by which the conveyance from John A. Dixon to her grantor, Henry A. Parker, is made to inure to her benefit. All that is effected thereby is the acquirement of the title of one of the three tenants in common as heirs at law of George O. Dixon. She did not enter under that deed. Her possessions then existed in subordination to the lease which had still three years to run.

Unquestionably, one tenant in common may oust his co-tenants and claim the title to the whole adversely. But to constitute an adverse possession in such a case the evidence must show some distinct facts tending to bring notice of the same home to the cotenants. *Barr* v. *Gratz,* 4 Wheat. 213; *McClung* v. *Ross,* 5 Wheat. 116, 124; *Bradstreet* v. *Huntington,* 5 Pet. 402, 440; *Speidel* v. *Henrici,* 120 U. S. 377, 386.

5. The last assignment of error is on an exception taken to the refusal by the court of a special instruction limiting the assessment of damages for mesne profits to a period commencing three years before the date of the amended declaration. The yearly value was admitted to be $180, and at plaintiff's request the jury were instructed to return a verdict for two-thirds of that sum per year for eight years.

The original declaration was filed something more than eight years before the trial. Defendant's prayer for instruction was based on the assumption that the amendment of the declaration, striking out the name of one of the three original plaintiffs, must be regarded as equivalent to the commencement of a new suit. This is an extremely technical view of the effect of that amendment, and in the absence of controlling authority, we must decline to accept it. The amendment made no change in the cause of action. The two remaining plaintiffs asserted the same title and prayed the same recovery as in the original declaration; nothing more and nothing less. Defendant was deprived of no defence that she had before. There was nothing to alter her position in the case or to require additional evidence or

preparation for the trial. She could not be prejudiced in any particular.

It is an entirely different case from that of an amendment adding a new count in ejectment on a demise from a new party asserting a different title, as in *Sicard* v. *Davis*, 6 Pet. 124, or from that in *Johnson* v. *District of Columbia*, 1 Mackey, 427, wherein no cause of action at all had been alleged before the amended declaration was filed. It would be impossible to lay down, in one case, a fixed rule by which the effect of an amendment, in this respect, may be determined with accuracy in all others. Each case must turn upon its own special circumstances. Whilst amendments making substantial changes in the cause of action and putting parties upon new lines of defence not necessary or pertinent to the case made in the original pleading ought generally to be regarded as equivalent to the institution of new suits, still the rule should never be so strictly applied as to work what might be palpable injustice, in the absence of negligence on the part of the plaintiffs.

Finding no error in the record, the judgment will be affirmed, with costs to the appellees.

*Affirmed.*